HOFFMAN *v.* BEARD.

## John M. Hoffman and Thomas S. Skinner v. John Beard and James Beard.

*Election of remedies: Ejectment: Partition.* The action of ejectment for the trial of the legal title and obtaining possession, when wrongfully withheld, whether of a whole or an undivided portion, and a bill in equity for the partition of lands held by tenants in common, and joint tenants, as provided by the statutes of this state, are not elective remedies, applicable generally to the same state of facts, and to be adopted by parties at their option.

Purely legal titles are to be tried at law, where a jury is a matter of right, unless there be some impediment to such trial which requires the aid of a court of equity to remove. When the complainant is not in possession, and the case shows an ouster and an adverse possession, and the legal title is not clear and beyond suspicion, the appropriate remedy for the trial of the title, and the obtaining of possession is by the action of ejectment, and not by a bill in equity for a partition.

*Administrator's deed: Identity: Lapse of time.* In a case where a petition by an administrator for leave to sell real estate was filed more than ten years after the death of the intestate, and after the administration account had been once closed, and the premises were regularly sold under the proceedings authorized by the probate court,—there being no evidence that the title to the land had ever been in the intestate, except that thirty years before his death, the title had been in a person of the same name,—it will be necessary in a proceeding to maintain the title derived through the administrator's deed to show the identity of the intestate with the owner of the land. [PER CAMPBELL CH. J.]

*Heard July 9. Decided October 25.*

Appeal in Chancery from St. Clair Circuit.

The bill in this cause was filed by John M. Hoffman and Thomas S. Skinner in the Circuit Court for the County of St. Clair in Chancery, against John Beard, James Beard and William H. White, for a partition of premises, alleged in the bill to have been owned in the year 1825 by John Biddle, Oliver W. Miller, Robert Smart and Thomas Scott. The bill further alleges that two of the defendants, John and James Beard, claim to own three undivided fourths of of said premises; that the defendant White claims an interest therein; that Thomas Scott, the owner of the other undivided fourth, died in 1854; that his administrator, by virtue of authority granted by the Probate Court, sold the interest of Scott to the complainants on the 17th day of

June, 1865, which sale was duly confirmed. The bill further states that the defendants claim some right and title to the land under a sale of the same for unpaid taxes, which sale the complainants allege to be illegal and void.

The defendants, John and James Beard, answer and admit the original ownership of the land as stated in the bill; they deny that Scott was seized of an undivided fourth of the land at the time of his death; they claim to own the whole of it in fee; they deny the regularity of the proceedings in the Probate Court; they admit the purchase of an undivided fourth at sales for unpaid taxes, and allege the sales to be legal and valid. ·

A replication was filed and proofs taken, and upon the hearing upon pleadings and proofs the bill was dismissed. The complainants appeal to this court.

*D. C. Holbrook* and *Atkinson Bros.*, for complainants.

*Mitchell & Farrand,* for defendants.

CHRISTIANCY, J.

This is an appeal from a decree of the Circuit Court for the county of St. Clair in Chancery.

The bill is in form mainly a bill for the partition of certain lands in the county of St. Clair, of which complainants claim to own the undivided fourth. They set forth their title substantially as follows: In 1825 John Biddle, Oliver W. Miller, Robert Smart and Thomas Scott became owners in fee of the premises. Afterwards, by several conveyances, the title of all the parties, except Scott, came to be vested in the defendants. In 1854 Thomas Scott died intestate, not having conveyed his one-fourth, and the bill alleges that Joseph E. Bigelow, of the county of Wayne (where Scott resided at his death), was appointed adminis-

trator on his estate; that in June, 1865, said administrator, under a license from the Probate Court of Wayne county, in pursuance of due notice, etc., sold and conveyed said one-fourth to complainants.

After thus setting forth their own title, complainants allege, upon information and belief, that defendants claim some right in said quarter interest under certain tax sales for delinquent taxes for the years 1840, 1841, 1843, 1844, 1845, 1846, 1848, 1850, 1851 and 1853; but that during the whole of said years, and ever since, the co-tenants and owners of the other three-fourths, and others claiming an interest therein, were in possession of the whole of said lands, and had cut large quantities of pine trees thereon and converted the same to their own use, and pretended to own the whole of said lands. Complainants then allege the invalidity of said tax sales for reasons which they specify, for non-compliance with various provisions of the statute; and they pray for a partition according to the rights of the respective parties, and, if the lands cannot be divided, that they may be sold.

The defendants answer, admitting the ownership of Miller, Smart, Biddle and Scott in 1825, but denying that Scott, at the time of his death, was the owner of the one-fourth. They deny all knowledge of the death of Scott or the appointment of the administrator; admit that he assumed to act as such, but allege that the lands were not embraced in the inventory originally made by him; allege, upon information and belief, that Bigelow, after his pretended appointment, abandoned the administration, and that nothing was done by him until near ten years; but allege that after the debts against the estate were barred by the statute of limitations, complainants, having, as they supposed, found some defect in the title of the defendants, induced the administrator to resume the administration,

under the pretense of paying debts, and to procure a license and make a pretended sale to complainants. They deny the existence of any debts; that any legal license was granted for the sale, and the regularity of the proceedings and sale; claim to have been in the exclusive possession of the whole land, claiming title for twenty years, and set up and insist upon their own title under the tax sales, and deny the co-tenancy of the complainants.

It will be thus seen that the whole contest, as disclosed by the pleadings, is upon the legal title to the lands, and not upon any question of the necessity, propriety, or mode of partition, nor upon any equity connected with either the title or the partition; that complainants are out of possession, and the defendants in, claiming the whole adversely; that complainants' title, if good at all, would enable them to maintain ejectment without the aid of a court of equity. All the questions, arising upon the titles set up on both sides, are peculiarly fit and appropriate for trial at law in an action of ejectment, and no obstacle exists to such a trial.

Such is the case as presented by the bill and answer. But it is unnecessary to determine whether the question of the right to maintain such a bill can properly be raised upon the pleadings alone, as one strictly of jurisdiction, as some of the decisions would seem to indicate; or whether the court, notwithstanding the denial of complainants' title, are to look into the evidence and sustain the bill, if the complainants' legal title is so clear as to leave no serious question, as seems to be inferable from some of the cases; since it appears by the evidence in this case, more clearly than from the pleadings, that the *whole controversy* between the parties, and every question connected with it, relate exclusively to the legal title of complainants, which is denied, and the legal title asserted by the defendants,

without a single feature requiring the aid of a court of equity, and that there is no obstacle to the trial of the title at law. It shows also that complainants have never been in possession, and strongly tends to show a disseizin of Scott (under whom complainants claim), nearly, if not more, than twenty years prior to the filing of the bill, by the defendants and those under whom they claim, and an adverse possession and claim of title of the whole during that time; that complainants' alleged title, purely legal in its character, is contested in good faith, and that many important questions, both of law and fact, are raised touching the appointment of the administrator, and the regularity and validity of the proceedings for the sale, which are peculiarly appropriate for trial at law. And, judging from the pleadings and proofs, the main purpose of the bill would seem to be, rather *to try the legal title* than to *obtain a partition,* as no question whatever is raised in the case except what grows out of the alleged want of title in complainants.

Under our statutes, which have provided an action of ejectment for the trial of the legal title and the obtaining of possession when wrongfully withheld, whether of the whole, or an undivided portion, and for a bill in chancery for the *partition* of lands held by tenants in common and joint tenants, it certainly cannot be claimed that these were intended as elective remedies, applicable generally to the same state of facts, and to be adopted by parties at their option. And I can see little more reason to suppose the Legislature intended the bill for partition as a remedy for the recovery of the possession of land upon a purely legal title, in a case entirely appropriate for ejectment, than that ejectment might be substituted for partition, especially as the defendant in ejectment is entitled to two-trials before a jury as matter of right, and to a third if the

court think justice will be thereby promoted; while in the partition suit, where he has no right to demand a jury at all, a single trial is to be final and conclusive, and the privilege of several jury trials might be thus taken away in all cases where an undivided portion only is claimed.

The special province of a bill for partition is to sever the joint possession, so that each may enjoy his share in severalty, and not to try legal titles. The title of the parties may, in one sense and to some extent, be said to come in question in all cases of partition by bill, but it is rather incidentally and formally. The usual course is to have a reference to a master or commissioner to ascertain and report upon the title, a mode obviously inadequate to a full and fair trial of a contested legal title, and only properly applicable, where there is no real contest upon it.

If the title, though of a legal character, be undisputed, or perhaps, though denied, if it appear to be so clear and incontestable as to admit of no reasonable doubt, and the court can see that a trial at law would be a mere formality, the bill will be maintained. If the title be an equitable one, or partly equitable and partly legal (*Overton v. Woolfolk, 6 Dana, 371*), the court of equity may very properly try the titles, and so probably when the title is of a purely legal character, but some obstacle exists to a fair and perfect trial at law.

And if the complainant be in actual or constructive possession with the defendants, and his title or co-tenancy be denied by them, the title, though legal in character, might very properly be tried under a feigned issue to be awarded by the court. But, as a general rule, under our statute for partition, a bill in equity, when complainant alleges a mere legal title, and the granting of a partition is alone the ground of the jurisdiction, no other or special grounds of equitable jurisdiction being shown; upon princi-

ple, I think, so long as any distinction is to be kept up between legal and equitable remedies, the complainant, to entitle himself to a partition, should be in the actual or constructive possession, or, at least, there should be no such adverse possession as to interfere with his enjoyment of the property without suit, unless the title be very clear. And if he have no such possession, and the lands are adversely held, and the title be doubtful or suspicious, the bill for partition is premature, and should either be dismissed or the proceedings stayed till complainant has had an opportunity to establish his title at law.

If the possession be vacant it would follow the title; if in possession of other co-tenants, not holding adversely, their possession is also his, or inures to his benefit.

This view is sustained by the uniform current of American authority, where the proceeding is by bill in equity, when the title is legal and no ground of equitable jurisdiction was shown beyond that of granting partition; and, so far as I have discovered, it is held with almost equal unanimity where the proceedings are by petition under statutes authorizing that particular mode of partition. See *Wilkin v. Wilkin, 1 Johns., Ch. 111; Phelps v. Green, 3 Id., 302; Coxe v. Smith, 4 Id., 371; Clapp v. Bromagham. 9 Cow., 530; Brownell v. Brownell, 19 Wend., 367; Hosford v. Merwin, 5 Barb., 51; O'Dougherty v. Aldrich, 5 Denio, 385; Brock v. Eastman, 28 Vt., 658; Thomas v. Garvan, 4 Dev., 223; Ricard v. Williams, 7 Wheat., 50; Lambert v. Blumenthal, 26 Mo., 471; Whitten v. Whitten, 36 N. H., 326; Stuart v. Coalter, 4 Rand., 74; Straughan v. Wright, 4 Rand., 493; Martin v. Smith, 1 Harp. (S. C.) R., 106; Warfield v. Gambrill, 1 Gill & J., 503; Stevens v. Enders, 1 Green (N. J. Law), 271; Maxwell v. Maxwell, 8 Iredell's Eq., 25; Dewitt v. Ackerman, 2 C. E. Green Ch., 215; Garrett v. White, 3 Iredell's Ch., 131; McCall's lessee v. Carpenter,*

*18 How., U. S., 297; Shearer v. Winston, 33 Miss., 149; Groves v. Groves, 3 Sneed, 187; Foust v. Moorman, 2 Cart. (Ind.), 17; Rozier v. Johnson, 35 Mo., 326; Walker v. Laflin, 26 Ill., 472.*

It has, however, been held in Massachusetts that where only a part of the common or joint owners are in possession claiming title to the whole, and holding adversely to complainant, he may, notwithstanding the disseizin, still maintain a petition under their statute for partition, where there is a real contest upon the legal title, unless the adverse possession has been so long as to bar the right of action (*Marshall v. Crehore, 13 Met., 462*), thus making the proceeding both an action of ejectment and a process for partition. But in that state the proceeding was by petition under the statute, and no general equity jurisdiction existed; and the lines between equitable and legal remedies were not kept as distinct as with us and in many other states. In the case of *Howey v. Goings, 13 Ill., 108*, which contains a *dictum* to the like effect with *Marshall v. Crehore*, there was no serious dispute about the titles, and the *dictum* is not sustained by *Overton v. Woolfolk, 6 Dana, 374*, cited in its support, which relates mainly to an equitable title. On the ground, therefore, that the complainants are out of possession and the bill and evidence tend to show an ouster and disseizin, and that the title should be tried and possession gained by complainants before partition should be granted, I think the complainants have failed to make a case entitling them to a partition. I find no American case, where the proceeding was by bill for partition, which controverts this rule, though some *dicta* may be found to the contrary. The rule above stated as the result of the American authorities, was first laid down by Chancellor Kent (in the case *Wilkin v. Wilkin*, above

cited), as the result of the English authorities, and substantially the same rule seems to have been universally followed in this country where the proceeding was by bill in equity, and almost universally where it has been by petition under statutes of the various states. It has been so long and so well established in this country, that it is but reasonable to suppose that the legislation in this and other states, providing for partition by bill in equity, has been framed and adopted with tacit reference to it, and it should therefore be so construed. The substance of the principle is, that purely legal titles are to be tried at law, and parties are entitled to have them so tried where they can have a jury trial as matter of right, unless there is some impediment to such trial which requires the aid of a court of equity to remove. Doubtless, where the complainant is in actual or constructive possession, it might be proper under our statute (*Comp. L.*, § *4631*), for the court to award a feigned issue before a jury, and in the same court to try the legal title; as, in such a case, ejectment would not be the appropriate remedy. But where, as in this case, the complainants are admitted to be out of possession, and the bill and evidence tend to show an ouster and adverse possession, and the legal title is not clear and beyond suspicion, it appears clearly that ejectment is the appropriate remedy for the trial of the title and the obtaining of possession.

It has been held in a very recent case in England (*Giffard v. Williams, Law Rep. 8 Eq., 494*), that there is no rule that a bill for partition cannot be maintained where the title is purely legal and disputed by the defendant, although the court will not entertain the suit where the title, being purely legal, is denied, and the main purpose of the bill is not partition but to prove the legal title.

This is somewhat different from the rule declared by Chancellor Kent, as the result of the English authorities

in his time, and which, as I have shown, has been universally adopted in this country in such cases,—a rule which has been so long and so thoroughly settled here and crystalized into our jurisprudence, and with reference to which our legislation ought to be construed, that I have no hesitation in saying I think it should be followed here in preference to any recent English decision which may conflict with it.

But, within the principle announced by this English case (whether within the example I will not say), it is very questionable at least whether the legal title should be tried in chancery in the present case; as I cannot resist the conviction from the statements of the bill and all the evidence and circumstances of the case, that the main object of the bill is to try the legal title, rather than obtain a partition, and thus to substitute partition for ejectment.

The court below might, in its discretion, have dismissed the bill, or suspended proceedings till complainants should have an apportunity to try the title at law. But we think, under the circumstances of this case, that discretion was properly exercised, and the decree of that court dismissing the bill must be affirmed with costs.

GRAVES and COOLEY, JJ. concurred.

CAMPBELL, CH. J.

The record in this case presents the question whether a controversy upon a legal title in a partition case can oust the jurisdiction, or render it necessary to resort to a legal action to recover possession before the court will finally dispose of the partition.

I think our statute is too explicit to permit the parties to such a case to be compelled to litigate their rights in any other suit, whether independent or ancillary. It gives

every tenant in common an absolute right to begin partition proceedings, unless his interest is a future and not a present right of possession, and authorizes the court to award issues of fact to be tried by jury, whenever it shall be deemed necessary to determine the rights of any of the parties in the premises, and requires the court to determine the rights of all the parties upon a hearing upon the pleadings and proofs in the cause.—*2 C. L.*, §§ *4616, 4618, 4631, 4635.* The means furnished are ample, to settle every controversy, and to do so more simply and speedily than in any other way. And there is nothing to prevent such a suit from securing the rights of all concerned.

An idea seems to have prevailed that controversies concerning legal titles can only be properly determined in common-law actions, and that whenever such a dispute arises in a partition suit, and is a real and not pretended controversy, the proceedings should be either dismissed, or stayed to abide the result of an action. It is not to be denied that there are some cases, and more *dicta*, which assert such a doctrine. But, whatever may be their force under other systems and policies, they cannot, it seems to me, be of any force against the clear terms of the statute, and would not apply to our system even if the laws were less explicit. Nor do I think the cases generally are by any means as favorable as is supposed to any such doctrine.

There is no English authority for holding that there is a want of jurisdiction in equity because of any such controversy. There are cases in which the proceedings have been stayed to permit actions at law. But it is quite clear this is not the usual practice.—*Giffard v. Williams, L. R. 8 Eq., 494; Baring v. Nash, 1 V. & B., 551; Parker v. Gerard, Ambl., 236; Calmady v. Calmady, 2 Ves. Jr., 563; Mundy v. Mundy, 2 Ves. Jr., 122,* and note in 1 *Hovenden's*

*supplement, 171.* Where further proof was required it was referred to a master.—*Agar v. Fairfax, 17 Ves., 533.*

A decree of partition is matter of right and not of discretion.—*Smith v. Smith, 10 Paige, 470; Baring v. Nash, 1 V. & B., 554,* and cases before cited. And it appears from these cases to have formed an exception to the ordinary rule formerly adopted in England by courts of equity, that legal titles must always, if required, be tried at law. The American cases, to which reference will be made presently, seem to have assumed that this rule was imperative in partition cases. But it has never been law in this country generally, and has never been regarded in Michigan. Trials at law have been granted of discretion but not of right; and the principles on which the more rigid doctrine rested have been long exploded here, and have now ceased to operate in England.

The acts known as Cairns' act, *21 and 22 Vic., c. 27,* and Rolt's act, *25 and 26 Vic., c. 42,* put an end to the old practice of compelling legal questions to be determined by common-law judges, and legal controversies to be sent down for settlement to common-law courts. The courts of this state, when we had a separate Chancellor, never required aid in deciding legal questions, and now that the same judges act in the double capacity, it would be a gross absurdity to act on any such theory as rests on a supposed unfitness in equity judges to decide the law. It was not the fitness of the case for a jury, but the character of the title involved, as legal or equitable, which determined the necessity; and if we, with our present system, resort to the practice, we do so for different reasons from those which gave rise to it. This is very clearly explained by Lord Cairns in *Bovill v. Hitchcock, 3 Ch. Ap., 417.* In that case the Master of the Rolls had declined to order certain ques-

tions of fact in a patent case to be tried by jury, which may now in any case in England, as it may here under our statute, be summoned in chancery. On appeal he was sustained in the refusal, and the language of the decision is so clear that I quote from it: "This appeal is rested on two grounds, the first being, that, as before the course of the court of chancery was altered, so as to throw upon the court the duty of deciding questions which, according to its former course, were sent to be tried at law, a question of this nature would have been tried before a jury, so now either party has a right to insist on its being so tried. I cannot accede to this argument. The effect of the acts is to impose on the court the duty of deciding these questions; and, in the absence of any direction to the contrary in the acts, the court must try them according to its ordinary course of practice. If the court thinks it best that a question should be tried before a jury, a jury can be had; but if, in the opinion of the court, a trial without a jury is preferable, neither party can claim a jury as a matter of right. It is a fallacy to say that under the old practice the court required a legal question to be tried by jury. What it required was the judgment of a court of common law. In most cases it was a necessary incident to proceedings at law that there should be the verdict of a jury before judgment; but these cases were sent to law, *not that they might be tried by jury, but because this court had no jurisdiction to decide upon legal rights.*"

If a case is not required to be tried by jury, it would be of no use to shift it from one court to another before the same judge. And if there are any questions of fact that it is desirable for a jury to pass upon, it is better to have them presented separately as chancery issues, than to have them thrown before the jury with all the mixed questions that may be presented by an ejectment suit. Land titles

are usually established by evidence much more fit to be passed upon by a judge than by a jury. And since our Constitution favors the removal of all needless distinctions between law and equity, and our statutes have furnished ample means for disposing of every kind of question in courts of equity, I can see no good reason for resorting to a practice that was never meant to exist under such a system as ours.

In *Wilkin v. Wilkin, 1 J. C. R., 111,* which is the authority on which nearly all the American cases rest, the Chancellor rested his decision expressly on the fact that the questions to be decided were legal questions. He did not regard the objection as going to the jurisdiction, because he reversed the Vice Chancellor's decision dismissing the bill, and ordered it to be retained, not to have an action at law commenced, but to allow one previously brought and then pending to be tried. But it is plain that he would have authorized a suit to be instituted if there had not been one already. He acted entirely on the theory that a legal title should be tried at law. In *Phelps v. Green, 3 J. C. R., 302,* there was no dispute about the complainant's title, and partition was granted him at once, but the defendants were required to litigate their claims. Our statute has provided that disputes among the defendants may be settled in the cause like the other questions, and that if thought necessary any fact may be tried by jury— § *4631.* In *Coxe v. Smith, 4 J. C. R., 271,* the title was equitable, and was passed upon by the court. In the more recent cases since the revised statutes there was a jurisdictional question which prevented any partition suit from being brought except by a party in possession. This would render it necessary to have the legal controversies decided before any suit could be brought at all in partition. This change was introduced by the revised statutes.—See *Beebee*

*v. Griffing, 14 N. Y., 235; Burhans v. Burhans, 2 Barb. Ch. R., 398; Bradstreet v. Schuyler, 3 Barb. Ch. R., 608; Jenkins v. Van Schaack, 3 Paige, 242.* The objection for want of possession, where that statutory rule prevails, applies to all partition proceedings whether at law or in chancery, and goes to the jurisdiction, and does not authorize the proceedings to be retained to abide the result of an action at law to recover possession.

There are some states which still require a complainant to be in actual or legal possession, and which hold an adverse possession to be an absolute bar to a partition. Generally, however, it forms no obstacle to the jurisdiction unless it has cut off the right of entry; and the only question has been whether the title should be vindicated at law or in equity before the final decree of partition. The cases requiring a resort to legal proceedings have usually regarded it as necessary, because such questions are, as stated in *Wilkin v. Wilkin,* appropriate to the common law, and not within the ordinary equity jurisdiction, although the principal subject—the partition itself—may·be, and usually they retain the bill as was done in that case. Thus, in *Horton v. Sledge, 29 Ala., 478,* it was intimated that disputed questions of *fact* should be tried by a jury, but it was also held the questions of law should be tried and decided by the court. Since that decision the statutes have enlarged the equity jurisdiction, and require the whole case to be settled together.—*Ormond v. Martin, 37 Ala., 598.* In Illinois, it has been held that the partition suit is not barred by adverse possession, less than the statutory period (*Howey v. Goings, 13 Ill., 95*), but that courts of chancery have no jurisdiction to try the questions of title, and must retain the case till the title is settled at law.—*Walker v. Laflin, 26 Ill., 472.* In Indiana, in an early case,—*Foust v. Moorman, 2 Ind., 17,*—there was a *dictum* that legal titles

should be settled at law; but in *Godfrey v. Godfrey, 17 Ind., 6,* it is said there is no good reason why they may not now be determined in equity. In North and South Carolina, the doctrine of the division of jurisdiction is rigid, and probably legal disputes would be referred to law courts in all cases.—*Garrett v. White, 3 Ired. Eq., 131; Maxwell v. Maxwell, 8 Ired. Eq., 25 ; Albergottie v. Chaplin, 10 Rich. Eq., 428.* In New Jersey a trial at law is given unless the facts appear sufficiently to enable the court of equity to pass upon the title, when the case will not be sent down.—*Lucas v. King, 2 Stockt., 277.* In Mississippi the same practice seems to be recognized, as the general doctrine is so stated in a case where the court decided finally upon the legal title without a trial at law. *Shearer v. Winston, 33 Miss., 149.* In Missouri the want of possession, as in Pennsylvania, and as (since the revised statutes) in New York, goes to the jurisdiction. But in general, as already stated, the fact of adverse possession not existing long enough to cut off the right of entry is no bar to the jurisdiction; and the title (except where the old equity rule of having legal questions remitted to law courts prevails), may be tried directly in the partition suit.— *Miller v. Dennett, 6 N. H., 109; Tabler v. Wiseman, 22 Ohio, 207 ; Marshall v. Crehore, 13 Metc., 462;* in which last case there is a very thorough vindication of the propriety of having the entire controversy decided together. In New York, before the revised statutes, the same rule was applied in partition cases in the Supreme Court. In *Bromagham v. Clapp, 5 Cow. R., 295,* the Supreme Court held that partition lay when by an adverse possession of twenty-four years the right of entry was barred, but the writ of right was not cut off,—the limitation for one purpose being twenty years, and for the other twenty-five. In the court of errors, *9 Cow., 530,* it was held that no parti-

tion lay after the twenty years bar without an action of right first brought, as there must be a right of entry existing. The action of ejectment has now superseded the action of right, and there is but one term of limitation.

Where, as in this state, the courts of chancery have full power to avail themselves of the aid of a jury without sending issues to law courts, and the same judges sit at law and in equity, every principle of convenience requires that all the issues should be decided in the same proceeding. Chancellor Walworth in *Smith v. Smith, 10 Paige R., 470,* says, that the statute is imperative and the right to partition absolute. And Chief Justice Shaw in *Marshall v. Crehore, 13 Metcf., 462,* refers at length to the provisions of the revised statutes of Massachusetts, from which the parallel provisions in our own statutes were substantially borrowed, so far as they apply to this question, and says the very purpose of these provisions was to make the suit for partition a proceeding to try and determine controverted questions of title. That the power exists here cannot be questioned.

Even if it were competent to require an action of ejectment it would be, I think, unwise to exercise it. That action is now statutory, and a single trial cannot settle the title, if the defeated party desires to re-try it; and the right to remove the cause by writ of error, joined to the right to two trials, may postpone its decision so long as to seriously impair the partition proceedings. Where issues of fact are tried by jury in chancery, or on chancery issues, the whole proceeding is under the control of the court, and whenever its conscience is satisfied it can make a decree. Moreover, in deciding what issues of fact should be tried by jury, none should be sent for such trial unless more appropriate for a jury than for a judge. In real estate cases very few such questions can arise.

In the present case there is no question on which any serious difficulty can arise except as to whether the title of Thomas Scott vested in complainants. The other questions are easy of solution upon the facts in proof. That question involves the regularity and validity of probate proceedings, and the identity of the party. The probate title is necessarily, from beginning to end, a paper title, and even if submitted to a jury would be really decided, by the court. The question of identity, as the case now stands, is proper for a jury, if one should be desired. Whether there is any real difficulty concerning it we have no means of knowing, as there is an entire absence of proof on the subject, and the court below evidently dismissed the bill on the ground of want of jurisdiction.

I do not think any relief can be granted to the complainant, if the probate title is regular, without some identification of the intestate with the Thomas Scott who purchased in 1825. Where nothing is shown to connect him with the property during the thirty years or thereabouts previous to his death, and no papers relating to it were left by him, and his estate was once closed without any suspicion that he owned the land, and more than ten years after his death the estate is opened and the administrator obtains an order of sale on a petition showing that he knows nothing about the title except on general information, which, it appears, came through Hoffman's agency, it would be in violation of all the usual legal presumptions to assume that the Thomas Scott, who died in the close of 1854, was the original Thomas Scott, without some proof to that effect.

I think this question must be cleared up in some way before the case is passed upon, and that it is a proper jury question, if the parties are at variance upon it. But I think there is no other question requiring the aid of a jury.