MUIRHEAD *v.* SANDS.

1. TAXES — COLLECTION BY SALE OF LANDS — CONSTRUCTION OF LAW OF 1893.

By the express terms of section 60 of the tax law of 1893 (Act No. 206), lands theretofore returned as delinquent for taxes were made subject to disposition, sale, and redemption in accordance with the provisions of that act; and, in so providing, such section was not inconsistent with sections 125 and 126, reserving all rights that may have *accrued* to any person under previous laws, even though the effect of the act was to hasten the time of sale and shorten the period of redemption as to lands so returned.

2. SAME—CONSTITUTIONALITY OF LAW.

The act mentioned, in thus altering the time of sale and the period for redemption as to lands previously assessed, is not open to the objection that it violates the provision of the Federal Constitution (article 1, § 10) that no State shall enact any law impairing the obligation of contracts, since proceedings for the collection of taxes are essentially *in invitum,* and do not presuppose the existence of any contract relation; nor does the act conflict with the provision of the State Constitution (article 6, § 32) that no person shall be deprived of his property without due process of law.

3. SAME—REDEMPTION—ERRONEOUS CERTIFICATE.

The period of redemption is by section 74 of the act expressly fixed at one year from the date of sale; and the landowner is not prejudiced by the fact that the certificate of sale, issued conformably to section 71, erroneously recites the date at which the purchaser will be entitled to a deed.

111 487
111 656
111 487
112 105
113 384
111 487
115 127
111 487
116 582
111 487
f118 10
f118 12
118 14
118 28
118 93
118 204
118 256
118 552
119 104
111 487
f121 58
121 83
f121 673
f121 674
111 487
124 258
111 487
126 377
111 487
127 299
111 487
s69NW 826
132 266
111 487
136 s670
111 487
138 s587
111 487
147 333

4. SAME—SALE OF STATE BIDS.

   *It seems* that lands bid off to the State were subject to private purchase at the office of the auditor general as "State tax lands," under section 84, without being first reoffered at the next succeeding annual sale under section 78, and before the expiration of the period of redemption.[1]

5. SAME—VALIDITY OF DECREE—DOLLAR MARK.

   The omission of the dollar mark from the published list of delinquent lands does not render a decree for their sale invalid, where the figures were divided in such manner as to indicate a place for dollars and cents, and they were sufficiently designated in the decree itself.

6. SAME—PROOF OF PUBLICATION—SUFFICIENCY.

   Under section 66 of the act, providing that any person familiar with the facts may make an affidavit as to the publication of the petition of the auditor general and the order of hearing thereon, the affidavit need not recite that the affiant is familiar with the facts sworn to.

7. SAME—DECREE—ENTITLING.

   The decree in such proceeding is not invalid because, in addition to the caption prescribed by section 67, it contains a caption importing that the State is the complainant and certain delinquent taxpayers are defendants.

8. SAME—RES JUDICATA.

   Personal service upon the delinquent taxpayer is not essential to the jurisdiction of the court to enter a decree, it being expressly provided by section 66 that notice by publication shall be equivalent to personal service; and all questions as to the regularity of the proceedings prior to the decree, not relating to the payment of the taxes or the exemption of the property from taxation, are foreclosed by the decree.

Appeal from Kalkaska; Aldrich, J.   Submitted October 9, 1896.   Decided January 5, 1897.

Bill by Peter Muirhead against Louis Sands to quiet title.   From a decree for complainant, defendant appeals. Affirmed.

*William D. Totten* and *Cassius M. Phelps*, for complainant.

*Smurthwaite & Fowler*, for defendant.

---

[1] See note on page 492.

MONTGOMERY, J.   Complainant, in January, 1895, became the purchaser from the State of the 78.89 acres of land in controversy, under a tax deed; the State having become the purchaser at the annual tax sale in December, 1893, the lands having been sold for the delinquent taxes of the year 1891.   This bill is filed to quiet complainant's title under his tax deed.

1. It is claimed that under the law of 1889, as amended by the law of 1891, lands assessed for taxes of that year, upon which the taxes were unpaid, must be returned delinquent to the county treasurer in March, 1892, and that section 51'of the act provides that all lands returned delinquent shall become subject to sale one year from the 1st day of July next after their return, and that by section 62 these lands could be sold on the first Monday in May next following the date at which they became subject to sale, so that they could not have been sold under that act before the first Monday in May, 1894, and that by section 68 the owner can redeem at any time previous to one year from and after the 30th day of September next succeeding such sale; so that, if these lands had been sold under the act of 1891, they would have been subject to redemption until September 30, 1895, whereas under the amended law the sale was made in December, 1893, and complainant's deed was executed in January, 1895.   It is claimed that the amended law of 1893 does not apply to these lands at all, and that the act of 1891 is yet in force as to them.   It is conceded that some parts of the act of 1893 seem to contemplate that the provisions of that act shall apply to the sales of certain lands returned delinquent for taxes of previous years.   Section 60, Act No. 206, Pub. Acts 1893, is as follows:

"All lands which have been or may hereafter be returned to the auditor general as delinquent for taxes, and upon which any taxes are now or shall hereafter remain unpaid, after their return to the auditor general under the provisions of this act, or to the several county treasurers of the State under the provisions of Act No. 200 of

the Public Acts of 1891, for the period of one year or more, shall be subject to disposition, sale, and redemption for the enforcement and collection of such tax liens, in the method and manner as hereinafter provided."

These provisions would seem to be clear. But it is contended that the provisions of section 125, which reserves all rights which have accrued to any person under the previous tax laws, and section 126, which, after repealing contravening acts, provides that such repeal shall not destroy or affect any rights which may have accrued or which may hereafter accrue under such acts or parts of acts while the same were in force, are inconsistent with the provisions of section 60, and indicate that it was not the intention that proceedings to enforce the collection of the tax assessed under the law of 1891 could be taken under the law of 1893. It is asked, "Is not the right to own and hold property one of the dearest vested rights known to the law?" The answer is, of course, obvious. But we think it clear that section 125 and section 126 were not directed to the reservation of these rights, but to the protection of such rights as *accrued under* the previous acts. The right of defendant or his grantors to own this property was not derived under the tax laws.

It is next said that section 71 of the tax law of 1893 shows that the legislature did not intend to shorten the periods of sale and redemption of lands delinquent for the tax of 1891. This section gives the form of the certificate of sale, which contains the statement that the purchaser will be entitled to a deed of conveyance in one year from the 30th day of September next following. It is evident that, in copying this certificate into the law of 1893, a mistake occurred, as it was taken bodily from the certificate provided for by the law of 1891. But other sections of the statute of 1893 make the intention of the legislature clear as to the date of redemption. Section 70 provides that certificates shall be given to each purchaser of the lands and interests bid off by him, showing the

year and the tax for which he has purchased, and also the amount thereof, and of all other taxes paid by him at the time of such purchase, stating that he will be entitled to a deed after the period of redemption provided for in section 74 has expired.   Section 74 provides that "any person owning any of the lands sold as aforesaid, or any interest therein, may, at any time within one year from and after such sale, redeem any parcel of such lands, or any part or interest in such lands," etc.   These provisions make it clear that the period fixed by law for redemption was one year, and the original owner cannot be concerned as to the form of the certificate given to the purchaser, nor would it be material if no certificate was given at all.   The law fixes the time within which redemption can take place, and his rights are not affected by the evidence of purchase which the statute has provided shall be furnished to the purchaser.

It is next contended that, if the law of 1893 be construed to apply to the taxes for the year 1891, it hastens the time of sale of lands delinquent for taxes, and cuts down the period of redemption provided by the previous law, and is to that extent unconstitutional, in that it violates section 10 of article 1 of the Constitution of the United States, prohibiting enactments by the State impairing the obligation of contracts, and article 6, § 32, of the Constitution of Michigan, in that it deprives persons of their property without due process of law.   We think neither of these positions is tenable.   A labored argument is made to show that the relation between the State and the owner of the land is a contract relation, for the reason that the taxes assessed become a debt to the township from the person to whom they are assessed.   But the proceeding is essentially *in invitum*, and the proceeding on a sale of land is a remedy for the delinquency of the taxpayer. The law affecting the remedy is in such cases subject to amendment, even though the time fixed for the sale or redemption be shortened.   25 Am. & Eng. Enc. Law, 410; Black, Tax Titles, § 353; *Baldwin* v. *Ely*, 66 Wis.

171; *Negus* v. *Yancey*, 22 Iowa, 57. Defendant relies upon *Cargill* v. *Power*, 1 Mich. 369, which case proceeds upon the view that the period of redemption on a mortgage sale, as fixed by statute at the time the mortgage was executed, is to be deemed a part of the engagement of the parties. No such construction can be placed upon the statute here under consideration. There was no agreement between the State and the taxpayer as to the period of redemption.

2. It is contended that under the law of 1893 there was no provision for any private sale of State bids until after the period of redemption had expired, and that it was the duty of the county treasurer to offer the land held on State bids for sale at the next annual sale. The distinction claimed is that, when lands are bid off to the State for taxes, they remain *State bids* until offered for sale the second time, under section 78, and if again bid off to the State, and not redeemed, when redemption expires they become *State tax lands*, and that they may then be sold at private sale, under section 84.[1]

It is evident that the provision for the sale of State tax lands at private sale is not one for the benefit of the original owner, as the period of redemption fixed by the statute is precisely the same whether the State or an individual becomes the purchaser. Section 78 provides that—

"All lands heretofore or that may be hereafter bid off to the State for taxes, which have not been redeemed or

---

[1] The distinction sought to be drawn by counsel between "State bids" and "State tax lands" is not the precise distinction recognized by the auditor's department. Lands bid to the State are there regarded as "State bids" before, and "State tax lands" after, the expiration of the redemption period. In this connection it will be observed that the statute (section 78 *et seq.*) does not in terms provide for a second bidding off to the State, and, in practice, lands once bid to it are merely carried upon the State books until purchased by individuals, either at the annual sales or at the office of the auditor. In the present case, the lands were bid off to the State in December, 1893, and complainant bought at private sale January 15, 1895, after the period for redemption had expired, and after one regular public sale had intervened.—REPORTER.

otherwise disposed of, shall be offered for sale by the county treasurer at the regular annual tax sales."

Section 84 provides that—

"Any person may purchase any State tax lands by paying therefor the amount for which the same was bid off to the State, with interest on the same at the rate of 8 per cent. per annum from date of sale, together with the other taxes remaining a lien on such lands at the time of the purchase so made, with the interest thereon at the rate provided in this act. Upon making payment as above, such purchaser shall be entitled to and receive a certificate and a deed conveying all the right, title, and interest of the State to such tax lands acquired or accrued by virtue of the original sale or sales to the State."

The contention of defendant has some support in the fact that the legislature in 1895 apparently deemed it necessary, or at least wise, to amend section 84 by inserting "State bids" before the words "State tax lands." This is, negatively, perhaps, a legislative construction of the previous act. On the other hand, it is evident that the auditor general's department construed the words "State tax lands" to include all lands of which the State had become purchaser, either upon the original sale or upon a second sale to the State. Turning to section 70, we find a use of the words "State tax lands" consistent with this construction, and which, we think, shows the sense in which the term "State tax lands" was used. This section provides, in substance, that, in case a sale of lands cannot be made at the annual sale, the county treasurer shall bid off the same in the name of the State, and in such case the county, township, school, and other taxes assessed on the lands so bid off to the State, and the interest and charges thereon, shall remain a lien upon said lands, and any person or persons who shall afterwards purchase such lands of the State, as State tax lands or otherwise, shall be liable for, and shall pay, all taxes then remaining unpaid. We think the sale was regular.

3. It is claimed that the judgment is void for the reason that on the petition and published list the dollar mark

does not appear. The figures were divided in such manner as to indicate a place for dollars and cents, and in the judgment they were sufficiently designated. We held in the case of *Millard* v. *Truax*, 99 Mich. 159, that a judgment entry was insufficient if it failed to show any dollar mark, or anything in terms to indicate that money was intended. This rule is supported by Cooley, Tax'n, (2d Ed.), 529, but, we think, should not apply to other proceedings in the course of taxation. See Black, Tax Titles, § 117.

4. It is claimed that there was no sufficient proof of the publication of the petition. The affidavit is sworn to by a Mr. Tinklepaugh, who swears that he is printer and publisher of the Kalkaska Leader, and who swears positively to the fact of publication. The statute (section 66) provides, "Any person familiar with the facts may make an affidavit as to the publication required." It is claimed that, as the affidavit does not contain a statement that the person making it is familiar with the facts, it is insufficient. We think this contention is without force. The intention and purpose of the statute were to authorize any person who was able to swear to the facts to make the affidavit, and the fact that he swears to the facts is evidence of his ability to do so.

5. It is contended that there was no decree entered in the case. The statute providing for the decree (section 67) provides that it shall have the usual caption of decrees, and shall be substantially in the following form: "In the Matter of the Petition of the State of Michigan for the Sale of Certain Lands for Taxes Assessed Thereon," etc. In this case the decree was entitled, "State of Michigan. The Circuit Court for the County of Kalkaska, in Chancery. State of Michigan, Complainant, vs. C. P. Sweet and Certain Other Delinquent Taxpayers of Said County, Defendant." Following this, the usual caption, and thereafter, "In the Matter of the Petition of the State of Michigan for the Sale of Certain Lands for the Taxes Assessed Thereon." We think this was clearly enough to identify the proceedings, and that the

previous entitling was not misleading, and, although irregular, may be treated as surplusage.

6. The other questions presented relate to the regularity of the proceedings prior to the decree. We must hold that these questions were all foreclosed by the decree. In *Cole* v. *Shelp*, 98 Mich. 58, we held that every owner of land is presumed to know the law, and that he knows that his land is subject to taxation. The statute makes the publication the equivalent of personal service, and it is therefore the duty of the owner to watch the proceedings provided for by the statute for the foreclosure of the lien, and interpose any objection he may have to the validity of the tax. The purpose of the statute is to give every person his day in court, in an equitable proceeding. We are cited to the case of *Fowler* v. *Campbell*, 100 Mich. 398, in which it was held that where lands were improperly assessed to the estate of R. M. Risdon many years after the estate had been closed, and where there was no personal service upon the resident heirs, the court was without jurisdiction to grant the decree. This case was put distinctly on the ground, however, that personal service was required by the statute then in force. Under the law of 1893, no personal service is required. The notice by publication is notice to all landowners within the county, and the question for adjudication as to the lands named in the published list is whether there is a tax due to the State from the owner. This includes the question of whether it is properly assessed, and whether proper steps have been taken to charge the land after the assessment. If the owner permits the case to proceed to decree, all these questions become *res adjudicata*. The statute (section 70), in terms, provides that no sale shall be set aside after confirmation, except in cases where the taxes were paid, or the property was exempt from taxation, and that in such cases the owner of such lands may move the court, at any time within one year after he shall have notice of such sale, to set the same aside. There is no claim in this case either that the taxes had been paid or that the

lands were exempt from taxation. This construction of the law may, in particular cases, work a hardship; but the law is the outgrowth of many years of investigation and experience, and was conceived by the lawmakers to be the best measure which could be adopted, having in view the purpose of compelling the owner to pay his taxes promptly, and it is not the province of the court to fritter away its plain provisions by forced construction.

The decree of the court below will be affirmed.

LONG, C. J., GRANT and MOORE, JJ., concurred. HOOKER, J., did not sit.