## BALL *v.* RIDGE COPPER CO.

1. TAXES—REVIEW—VALIDITY OF ROLL.

    The failure of the board of review to enter the valuations of the several parcels of land, as fixed by it, in the column of the assessment roll prepared for that purpose, as required by section 29 of Act No. 206, Pub. Acts 1893, does not invalidate the tax, where it does not appear that any changes of valuation were made by the board, in view of the further provision that the roll as prepared by the supervisor shall stand as approved and adopted as the act of the board of review, except as changed by vote of the board.

2. SAME—ENFORCEMENT—EFFECT OF DECREE.

    A valid decree in proceedings for the sale of land delinquent for taxes forecloses all questions as to the validity of the assessment.

3. SAME—CONSTITUTIONALITY OF ACT—DUE PROCESS OF LAW—NOTICE.

    The tax law of 1893 is not unconstitutional as depriving persons of their property without due process of law, in that it makes no provision for personal service of notice upon the delinquent taxpayer of the proceeding for the sale of his land, but, on the contrary, provides (section 66) that notice by publication shall be equivalent to personal service.

4. SAME—CONCLUSIVENESS OF DEED.

    Nor is the whole act rendered void by reason of the provision therein (section 72) attempting to make tax deeds conclusive evidence of title.

5. SAME—RIGHT TO JURY TRIAL—WRITS OF ASSISTANCE.

    Nor is the constitutional right of trial by jury violated by the provision of the act (section 72) authorizing the court to put the purchaser in possession of the premises by writ of assistance.

6. CORPORATIONS—WRITS OF ASSISTANCE—DEMAND OF POSSESSION.

    A demand for the possession of land, made upon the agents of a corporation who are in the actual occupancy thereof, is a sufficient foundation for an application for a writ of assistance as against the corporation.

Appeal from Ontonagon; Haire, J.    Submitted January 27, 1898.    Decided July 18, 1898.

Petition by J. Everett Ball against the Ridge Copper Company for a writ of assistance.    From an order granting the writ, respondent appeals.    Affirmed.

*Ball & Ball* ( *M. J. Sherwood* and *Dan H. Ball*, of counsel ) for petitioner.

*Clark & Pearl*, for respondent.

LONG, J.    A petition for a writ of assistance was filed by J. Everett Ball in a proceeding by the auditor general of the State in the Ontonagon circuit court, in chancery, for the sale of certain lands delinquent for taxes.    Respondent answered the petition, and, after a hearing in that court, an order was made directing that the writ of assistance issue.    Respondent appeals.

It appears that the lands were bid in by the State in December, 1895; and in February, 1897, the auditor general executed and delivered to the petitioner deeds for the lands.    Demand of possession was made upon the parties in possession of the lands by the petitioner, and, upon the refusal to surrender, this petition was filed.    Respondent answered the petition, and by the answer claimed:

(1) That the court had no jurisdiction to enter the decree of sale, for the reason that there was no completed assessment roll, as it was not reviewed by the board of review of the township, as required by the statute; that there was no proper certificate attached, and no entry of values by the board in separate columns.

(2) That the tax law of 1893, under which the lands were sold, is unconstitutional, in that it provides for no personal service of notice upon the landowner of the proceeding for the foreclosure of the tax lien, which results in a decree and sale of the land, thus depriving the owner of his property without due process of law, contrary to the provisions of the fourteenth amendment to the Constitution of the United States; and also that it is unconstitutional for the reason that it provides that the tax deed shall be conclusive evidence of title in the tax purchaser.

(3) That the act is also unconstitutional in so far as it provides for the granting of a writ of assistance to the purchaser of the tax title, as it deprives the owner of the right to try the title to his land before a jury in an action of ejectment.

The questions will be discussed in the order stated in the answer.

1. Section 29, Act No. 206, Pub. Acts 1893, provides for a meeting of the board of review in each township on the Tuesday next following the third Monday of May in each year; that the supervisor shall submit to the board his assessment roll, and the board shall examine and review the same. The board is given power, on sufficient cause shown, to add the names of persons to the roll; also, the values and descriptions of personal and real property liable to assessment, which has been omitted. It may also correct errors in names and descriptions of property. This section then provides:

"The board shall pass upon each valuation and each interest, and shall enter the valuation of each, as fixed by it, in a separate column. The roll as prepared by the supervisor shall stand as approved and adopted as the act of the board of review, except as changed by a vote as herein provided."

Section 30 provides:

"After said board shall complete the review of said roll, a majority of said board shall indorse thereon and sign a statement to the effect that the same is the assessment roll of said township for the year in which it has been prepared and approved by the board of review."

An abstract of the assessment rolls for 1892 and 1893 is contained in the record. In each of these years the columns for the valuations fixed by the board are left blank. There is a certificate attached to each roll, and signed by the members of the board of review, in the following form:

"Assessment roll for the township of Greenland, county of Ontonagon, and State of Michigan, for the year 1892 [and 1893], as approved by the board of review."

There is nothing upon either roll showing that the board of review made any changes in the roll by adding to or striking from the roll. Inasmuch as the statute provides that "the roll as prepared by the supervisor shall stand as approved and adopted as the act of the board of review, except as changed by a vote as herein provided," and there being no figures in the columns which are prepared for such changes, the presumption follows that no changes were made by the board, and hence there was no necessity to insert any figures in such columns. *Chamberlain* v. *City of St. Ignace*, 92 Mich. 335. But, in any event, that question was foreclosed in the auditor general's proceedings in which the decree was entered. *Muirhead* v. *Sands*, 111 Mich. 487.

2. Section 62 of the act provides that, on the filing of the petition by the auditor general, the court shall make an order fixing a day for hearing, etc. Section 66 provides that this petition and order shall be published at least once in each week for four successive weeks next prior to the time of hearing, and further provides:

"The publication of the order and petition aforesaid shall be equivalent to a personal service of notice on all persons who are interested in the lands specified in such petition of the filing thereof, of all proceedings thereon, and of the sale of the lands under the decree, and shall give the court jurisdiction to hear such petition, determine all questions arising thereon, and to decree a sale of such lands for the payment of all taxes, interest, and charges thereon."

It appears that the respondent is a resident corporation, and was in possession and occupancy of the lands in controversy here.

It was said in *Muirhead* v. *Sands, supra*, that—

"The statute makes the publication the equivalent of personal service, and it is therefore the duty of the owner to watch the proceedings provided for by the statute for the foreclosure of the lien, and interpose any objection he may have to the validity of the tax. The purpose of the statute is to give every person his day in court, in an equitable proceeding."

This case followed the rule of this court in *Cole* v. *Shelp*, 98 Mich. 58, and *In re Wiley*, 89 Mich. 58. Inasmuch as counsel have reargued that question in their briefs, we have re-examined it, and are satisfied that the ruling heretofore made must be adhered to. Judge. COOLEY, in the second edition of his work on Taxation (page 527), speaking of the proceeding to enforce the payment of the tax upon land, and of its nature, says:

" Proceedings of this nature are not usually proceedings against parties; nor, in the case of lands or interests in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself, rather than to the owners of the land; and if the owners are named in the proceedings, and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing shall not be lost to them, than from any necessity that the case shall assume that form. As in all other cases of proceedings *in rem*, if the law makes provision for publication of notice in a form and manner reasonably calculated to bring the proceedings to the knowledge of the parties who exercise ordinary diligence in looking after their interests in the lands, it is all that can be required."

Two years before the above work was written, Mr. Justice COOLEY, in the *State Tax-Law Cases*, 54 Mich. 362, had said:

" The first objection made to the statute is that it makes no provision for personal service on resident owners of land. We think this objection without force; but, in view of the necessary length of the opinion, we pass it without discussion, for the reason that the respondent, by filing demurrer, has put itself in a position which precludes the raising it."

In *Pennoyer* v. *Neff*, 95 U. S. 714, the distinction is clearly drawn between actions in which the notice must be personal and those in which it may be by substituted service, as by publication, and it is said: "Such service [substitutive] may answer in all actions which are substantially proceedings *in rem*." This rule was also recognized and followed in *Francis* v. *Grote*, 14 Mo. App.

324; *Eitel* v. *Foote*, 39 Cal. 439; *Chauncey* v. *Wass*, 35 Minn. 23; *Kansas City* v. *Duncan*, 135 Mo. 583; *Dousman* v. *City of St. Paul*, 23 Minn. 398.    See, also, Black, Tax Titles, § 166.

In *Winona, etc., Land Co.* v. *Minnesota*, 159 U. S. 537, the question of the sufficiency of the notice by publication under the Minnesota tax statute was under consideration.    Mr. Justice Brewer said:

"All the privileges which are secured to the property owner in respect to the taxes of the current year are also secured to him in reference to those imposed under amended section 113.    He is therefore notified and given an opportunity to be heard before his property is taken from him.    Questions of this kind have been repeatedly before this court, and the rule in respect thereto often declared.    That rule is that a law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the fourteenth amendment to the Constitution which declares that no State shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it either before that amount is determined or in subsequent proceedings for its collection.    *    *    *    That the notice is not personal, but by publication, is not sufficient to vitiate it.    Where, as here, the statute prescribes the court in which and the time at which the various steps in the collection proceedings shall be taken, a notice by publication to all parties interested to appear and defend is suitable, and one that sufficiently answers the demand of due process of law,"— citing *State Railroad Tax Cases*, 92 U. S. 575, 609; *Hagar* v. *Reclamation District*, 111 U. S. 701, 710; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Lent* v. *Tillson*, 140 U. S. 316, 328; *Pittsburgh, etc., R. Co.* v. *Backus*, 154 U. S. 421.

The authorities might be multiplied upon this subject. The great weight of authority supports the ruling made in *Muirhead* v. *Sands*, 111 Mich. 487.

It is contended that, the statute having provided that the tax deed shall be conclusive evidence of title in the purchaser, the act is therefore void.

"Declaring tax titles conclusive is no new thing in legislation. * * * The legislature has repeatedly undertaken to give greater force to tax deeds than could legally be sanctioned. But the attempt, though unsuccessful, was never supposed to affect the whole tax law." Judge COOLEY in *State Tax-Law Cases,* 54 Mich. 367.

Whether the deeds in the present case are to be treated as conclusive or not is wholly unimportant. Even if that clause should be held unconstitutional, it would not render the whole act void. If the court had jurisdiction to render the decree, no irregularities prior to the decree can now be set up to defeat the deeds.

3. Section 72 of the tax law provides: "The courts may, on application, put the purchaser in possession of the premises by writs of assistance." It is the contention of counsel that this provision is unconstitutional, because it deprives the landowner of the right of trial by jury in an action of ejectment, and is in violation of section 27 of article 6 of the Constitution of this State, which provides that "the right of trial by jury shall remain." The argument is that numerous questions of jurisdiction to enter the decree may arise, and these questions may rest upon facts to be passed upon, and which are still open to attack, affecting the validity of the title.

This is not a trial of the respondent's right of possession, or of its title to the premises. Those questions were involved in the issue upon the auditor general's petition. Upon the filing of the petition for the writ of assistance, the inquiries are:

(1) Whether the court had jurisdiction to render the decree.

(2) Whether all the steps required by the statute have been taken in making the sale, filing the report of sale, etc.

(3) Whether the time for redemption has expired.

These are questions which may be determined by the chancery court in the tax proceedings. The provision of the statute for the issuance of a writ of assistance is the means provided by the legislature to enable the court to

carry its decree into execution. The calling of a jury to determine the questions arising under this application would be but an idle ceremony. Where the court of chancery has power to decree, it has power to carry its decree into effectual execution. In cases of mortgage foreclosures it is the general rule that the purchaser of the lands sold under the decree is entitled to be put into possession by the court entering the decree. It was said in *Ludlow* v. *Lansing*, Hopk. Ch. 232, that "to transfer the title, and leave the purchaser to another suit to obtain possession from a party whose rights have been fully decided by this court, would be useless and vexatious circuity." The object of a writ of assistance is to compel parties who are bound by a decree in foreclosure to give up the possession which the decree and sale under it estop them from further asserting. *Ramsdell* v. *Maxwell*, 32 Mich. 285. And matter set up in defense to a motion for a writ of assistance cannot be received to affect the decree determining the defendant's rights, unless the matter goes to the jurisdiction of the court in rendering the decree. *Howe* v. *Lemon*, 47 Mich. 544; *Muirhead* v. *Sands*, *supra*.

We can see no distinction between a decree rendered in the foreclosure of a mortgage and the decree in a tax proceeding, as in the present case, so far as these questions are concerned. One deprives the party of the title and right to possession the same as the other; and the rules for the enforcement of a decree in a foreclosure proceeding are applicable to the enforcement of a decree in a tax proceeding. The respondent has had its day in court in this equitable proceeding. It is well settled in foreclosure proceedings that the purchaser of the premises under the decree cannot be compelled to resort to a court of law to obtain possession. In *Kershaw* v. *Thompson*, 4 Johns. Ch. 609, it appears that a decree of sale was made that did not contain any order that the purchaser be let into possession. An application for a writ of assistance was made, and the defense was specifically raised th _ the

purchaser under the decree should be left to his remedy by ejectment.  Mr. Chancellor Kent said:

"If it was to be understood that, after a decree and sale of mortgaged premises, the mortgagor or other party to the suit, or, perhaps, those who have been let into the possession by the mortgagor *pendente lite*, could withhold the possession in defiance of the authority of this court, and compel the purchaser to resort to a court of law, I apprehend that the delay and expense and inconvenience of such a course of proceeding would greatly impair the value and diminish the results of sales under a decree. * * * It seems to be absurd to require the assistance of two distinct and separate jurisdictions for one and the same remedy, viz., the foreclosure and possession of the forfeited pledge. * * * It may be safely laid down as a general rule that the power to apply the remedy is co-extensive with the jurisdiction over the subject-matter. A bill to foreclose the equity of redemption is a suit concerning the realty, and *in rem;* and the power that can dispose of the fee must control the possession."

This is the rule of all the cases in foreclosure proceedings. *Montgomery* v. *Tutt,* 11 Cal. 190; *Terrell* v. *Allison,* 21 Wall. 289; *Schenck* v. *Conover,* 13 N. J. Eq. 220 (78 Am. Dec. 95); *Stanley* v. *Sullivan,* 71 Wis. 585 (5 Am. St. Rep. 245).

But counsel contend that our Constitution guarantees the right of trial by jury, and that, therefore, the respondent was entitled to a trial in an action of ejectment, where a jury might be called. This question was discussed by Mr. Justice COOLEY in the *State Tax-Law Cases, supra.* It was there said:

"This case is a proceeding in equity instituted by the State to enforce against a parcel of land a lien which it claims for taxes, and it is a different proceeding altogether from any which was known to our jurisprudence in 1850. It is a new proceeding, and therefore, if jury trial cannot be had in it, that method of trial is not cut off, but is simply not given. There is nothing in the Constitution which renders it necessary to provide for jury trial in new cases. The constitutional provision is, 'The right of trial by jury shall remain,' by which we are to understand

merely that it is retained for the cases in which it existed before. * * * But it may be said, and is said, that, in the event of a sale taking place and of a deed being given in these proceedings, jury trial would be an idle ceremony, because the act makes the deed conclusive evidence of title in the purchaser. In response to this it may well be replied—and the experience of every practicing lawyer will confirm it—that jury trial in cases involving the validity of a tax deed was always an absurdity. * * * Such cases are therefore either tried by the court without a jury, or, if a jury is called, the court, by his charge, determines what the verdict should be, and the jury merely bow their heads in assent. Jury trial, therefore, as a great constitutional privilege in such cases, if not calculated to provoke a smile as an absurdity, is certainly without any claims upon courts for the straining of a point for its protection. * * * It is often said that a court of chancery is not the proper tribunal for the trial of titles to land, and perhaps a notion has arisen from this that there is some constitutional impediment. If it were the fact, it would be immaterial in this case, for this, as we have already said more than once, is not a case in which titles are to be tried, or in which a title is even disputed. But the notion that the chancery court cannot try titles to land under proper legislative authority is quite baseless. My Brother CAMPBELL showed this very satisfactorily in *Hoffman* v. *Beard*, 22 Mich. 59, 69. That case was a suit in partition, and the land was held adversely to the complainant."

In *Ward* v. *Farwell*, 97 Ill. 593, the constitutionality of a statute allowing a receiver of an insurance company to file a bill to assess the stockholders was attacked because it did not provide for a trial by jury. The court cited the provision in regard to jury trial, as contained in the several constitutions that have been in force in Illinois, and said:

"The constitution of 1870, by which the question under consideration must be determined, guarantees the right of trial by a jury to all persons, whether natural or artificial, to the same extent and in the same manner it had been enjoyed previous to its adoption. The provisions of the previous constitutions above cited were never regarded, so far as we are advised, as being mandatory upon courts

of equity, if, indeed, as having any application to proceedings in those courts. And it was, and still is, under the present constitution, the constant practice of those courts to decide, without the intervention of a jury, important questions of fact involving property rights, without at all consulting the wishes of the parties to the proceeding; whereas, if the same questions were to arise in a common-law action, either of the parties to the suit would have the constitutional right to have them passed upon by a jury. And the right of a court of equity to pass upon questions of this kind does not depend upon the fact that the cause of action was one of equitable cognizance prior to the adoption of the existing constitution. It is sufficient if it is one in fact, without regard to when it became so or was first recognized by the courts as such. It is a fact well understood by all who are familiar with the history of courts of equity that their jurisdiction, from the earliest times to the present, has been of a gradual and constant growth. Originally, the subjects over which they assumed jurisdiction were comparatively few; but, in process of time, they have gradually increased to an almost indefinite extent. Nor is it important whether this gradual growth in their jurisdiction is attributable to direct legislation, or to the enlarged views of the eminent chancellors who have presided over and shed so much luster upon those courts. It is sufficient if the subject-matter of the suit is one of equitable cognizance, without regard to when it first became so or was recognized as such; and in all such cases, except where some statute has otherwise expressly provided, the court may, if it thinks proper to do so, pass upon all questions of fact involved in the controversy without the intervention of a jury. Of course it would not be competent for the legislature to defeat the right of trial by a jury in common-law cases by simply declaring they might be tried in courts of chancery, and that the proceedings therein should conform to the proceedings in chancery causes. This would simply be an attempted evasion of the provisions of the constitution. Where a new class of cases are, by legislative action, directed to be tried as chancery causes, it must appear that, when tested by the general principles of equity, they are of an equitable character, and can be more appropriately tried in a court of equity than in a court of law. And if of this character, when brought in a court of equity, they stand upon the same footing with other

118 MICH.—2.

causes, and the court will have the right, as in other cases, to determine all questions of fact without submitting them to a jury.    *    *    *    The constitutional provisions we have cited were designed simply to secure the right of trial by jury in all tribunals exercising common-law jurisdiction as it had theretofore been enjoyed. It was not intended to confer the right in any class of cases where it had not previously existed. Nor was it intended to introduce it into special summary jurisdictions unknown to the common law, and which do not provide for that mode of trial,"—citing *Johnson* v. *Railroad Co.*, 23 Ill. 203; Sedg. Stat. & Const. Law, 549; *Ross* v. *Irving*, 14 Ill. 171.

Some question is raised over the sufficiency of demand of possession of the premises. We think the testimony conclusively shows that a proper demand was made upon the proper agents of the respondent who were in possession of the premises. The deeds were produced and exhibited to the parties in possession, who refused to surrender.

The court below ordered the writ of assistance to issue, and, we think, very properly, under the showing made. That order must be affirmed, with costs.

The other Justices concurred.