SCHULTZ *v.* DENNISON.

1. LANDLORD AND TENANT—CROP RENTS—TITLE.

Under an agreement between the owner of land and a third person renting the ground on shares, and dividing in advance the corn to be planted on the premises by assigning to the owner every third row of shocks, beginning at the south side, the owner had title to such of the standing corn as in the course of good husbandry would be put into the first, fourth, etc., rows of shocks, without reference to any division by the tenant.

2. SAME—PARTITION—JOINT OWNERSHIP—VOLUNTARY NATURE OF PROCEEDINGS.

Title to the landlord's interest passes to a joint owner who obtains his title to a portion of the rented real property by uncontested proceedings in partition, as by a voluntary conveyance without a reservation of the crops.

3. PARTITION—JOINT INTERESTS—CROPS.

It is competent for the court to adjust the equities of parties to a partition proceeding in the decree.

4. ESTOPPEL—DECEIT—INTERESTS IN CROP.

One who rents lands for a share of the crops determined specifically, by rows, in advance, is estopped to set up his agreement, in an action of trover for converting a portion of his share, against a defendant who took the interest of the lessor and appropriated a third of the crop in reliance on the tenant's statement that the owner was to have an undivided third of the corn.

Error to Kent; Perkins, J. Submitted October 14, 1909. (Docket No. 89.) Decided December 30, 1909.

Trover by Lawrence Schultz against Ella R. Dennison. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*Rodgers & Rodgers,* for appellant.

*Walker & Fitzgerald,* for appellee.

BLAIR, J. This is an action of trover to recover the value of certain shocks of corn. On the 27th day of June, 1902, the defendant, Ella R. Dennison, was divorced from her husband, William H. Dennison, by decree of the circuit court for the county of Kent, in chancery. This decree, after setting off certain lands to the said Ella, left 80 acres of land to the said William. Subsequent to the making of the decree, the said Ella obtained title to an undivided one-half of the 80 acres through tax deeds. In 1906, and again in April, 1907, the plaintiff entered into cropping agreements with William H. Dennison. The agreement made in April, 1907, according to plaintiff's testimony, was as follows:

"* * * Told him I had come to rent the corn ground again. He said, 'All right.' He wanted to know what share I wanted. We said we thought he ought to have one-third. He said that would be all right. Then he wanted to know how—I wanted to know of him how we would divide it, and he said, 'Well, I want something as near—something like it was last year, so if I want some for my chickens and turkeys I can go and get a little before you husk it.' Then I says, 'We will commence on the south side, and you take the first row along the south side and leave me two, and you one, and so on across the field.' And he said that would be all right. Upon that agreement I went on and cultivated 10 acres of corn ground northeast of Mr. Dennison's house. Commenced to plant along the south side, what I term the first row running east and west. I raised a crop of corn on that 10 acres. I planted it, cultivated it, took care of

it, and cut it. After it was cut I put it in shocks. I put 6 rows east and west into a row of shocks. There were 30-shock rows in the cornfield and 3 shocks over. There were 23 shocks in a row."

About the time of plaintiff's agreement with Dennison, the defendant instituted partition proceedings against Dennison in the circuit court, in chancery, which resulted in a final decree on July 1, 1907, setting off to the said Ella, among other lands, the 10 acres upon which the corn in question was then growing. A certified copy of this decree was served upon plaintiff prior to the alleged conversion of the corn. About the 10th of October, 1907, defendant, claiming to be entitled, under her partition deed, to Dennison's share of the corn, began to remove it, but took something less than one-third of the shocks. On the day she began removing it, she had a talk with plaintiff, which, according to his testimony, was as follows:

"Mrs. Dennison spoke, and she wanted to know what share of that corn Dennison got. I told her he got one-third, husked and put in the barn, and she says: 'He has taken 23 shocks. How does that come?' I says, 'I guess he has got a right to.' She says, 'Well, we are going to fix Dennison and take the corn.' I says, 'Are you?' And then Jim, Mr. James Hope, he spoke up, and he says, 'It don't do no good to serve papers on you folks.' He says he is going to take the ground share, no matter where we find it. My father, he says, 'You mean to say then you are going to take the boy's share?' And then Mrs. Dennison says, 'We are going to take the ground share, no matter where we find it.'"

Defendant did not take the first and fourth rows, and so on through the field, but took rows which plaintiff claimed were set apart and belonged to him under his agreement with Dennison.

At the close of the testimony, the circuit judge directed a verdict for defendant, on the grounds: (1) That her deed in partition gave her title to Dennison's share of the crop; and (2) that, in view of plaintiff's statement to her that Dennison's share was "one-third husked and put in

the barn," he was estopped to rely upon the claimed agreement that he was to have the first and fourth rows of shocks and so on. Plaintiff brings the record to this court for review upon writ of error, contending that the court erred in holding that defendant acquired title to Dennison's share of the corn through her partition deed, for two reasons:

"(1) Because at the time the decree of partition was made the title to the land was in one person, and the title of the crops was in another person. This constituted a constructive severance of the crop of corn which made the corn personal property and prevented its passing with the land.

"(2) Because at the time the crop was sown the tenure or right of possession of William Dennison in this particular 10 acres of land was uncertain and indefinite. It having terminated by operation of law while the crop was growing, he would, for that reason, have the right of emblements; that is, the right to harvest his crop after the termination of his right of possession."

1. In support of this proposition it is argued: That William Dennison, being a joint owner of the land, in exclusive possession thereof at the time of the agreement with Schultz, was entitled to the crops raised thereon as against the other joint owner, citing note to *Le Barron v. Babcock*, 9 L. R. A. 625 (122 N. Y. 153, 25 N. E. 253). That, under his contract with Dennison, Schultz, as a cropper, was entitled to possession of the whole crop until it was divided, citing *Freese* v. *Arnold*, 99 Mich. 13 (57 N. W. 1038).

"Therefore, the title to the land being in Dennison, or, to say the most, being in William Dennison and Ella R. Dennison, and the title of the crops being in Schultz, or, to say the most, being in Schultz and William Dennison, we submit there was such a constructive severance as would render the crops personal property and prevent their passing with the title to the land on which they were grown."

In considering this proposition, it is to be borne in mind that no question is made as to the right of plaintiff to two-

thirds of the corn. The only question is as to the title to Dennison's third. It is unnecessary to enter into a discussion of the technical relations of Schultz and Dennison for the purpose of determining their rights of title, possession, and division of the crop, since those rights, according to plaintiff, were determined in advance. In addition to the testimony as to the agreement above quoted, plaintiff testified as follows:

"*Q.* You said on direct examination that at the time you took the contract the corn was to be divided when cut and shocked. Why didn't you go down and divide it with Mr. Dennison or some one?

"*A.* There was no need of it.

"*Q.* Then it was not to be divided then, was it?

"*A.* It had already been divided.

"*Q.* Then what made you say that it was to be divided when it was cut and shocked?

"*A.* It was divided before it was cut and shocked; yes, sir.

"*Q.* Divided before the seed was sown?

"*A.* Yes, sir.

"*Q.* Divided before you turned a furrow, wasn't it?

"*A.* Yes, sir."

Plaintiff's father testified as follows:

" Lawrence told him he came up to rent the corn ground, as near as I can remember. He wanted to know what share he would give or wanted, and Mr. Dennison said one-third, husked and delivered, in the barn; and Mr. Dennison then wanted it so that he could get corn for early feeding for his chickens, and the boy says, ' Well,' he says, ' you can commence there along the lane on the south side and take the first row, leave me two, and take as much as you want to,' and Mr. Dennison says that would be all right, something. * * * In the year before the corn was divided equally, and he took the first row on the north side along the lane leading to the woods and left one, and so on."

As we understand the plaintiff's testimony, Dennison's share of the corn was set apart for and belonged to him, from the outset, regardless of the number of bushels of corn grown. Beginning at the south side of the field,

Dennison owned so much of the growing or standing corn *in situ* as would, in the course of good husbandry, be put into the first, fourth, seventh, etc., rows of shocks. His title to the corn did not depend on a division to be made by Schultz or any one else. We are therefore of the opinion that the point is not well taken.

2. We regard this proposition as well founded, unless, as contended by counsel for defendant, the nature of partition proceedings is such that conveyances thereunder are to be considered as the voluntary act of all of the parties. If the defendant's title is to be regarded as the result of hostile proceedings against her co-tenant, the case is ruled by *McDaniels* v. *Walker*, 44 Mich. 83 (6 N. W. 112). The subpœna in the partition proceedings was personally served upon William H. Dennison. He put in no answer, and a *pro confesso* decree was entered against him. The final decree, confirming the report of the commissioners partitioning the land, must, we think, be given the same effect as though it was the result of the voluntary action of the parties in deeding to each other. 30 Cyc. p. 287, sub. *b;* 21 Am. & Eng. Enc. Law (2d Ed.), p. 1,209, § 12; *Campau* v. *Barnard*, 25 Mich. 381; *Tharp* v. *Allen*, 46 Mich. 389 (9 N. W. 443). It is competent for the court, in partition proceedings, to adjust the equities of the parties in the decree. *Fenton* v. *Miller*, 116 Mich. 45 (74 N. W. 384, 72 Am. St. Rep. 502). Mr. Dennison was at liberty to file an answer in the partition proceedings, setting up his interest in the growing crops, and the court had power to reserve such interest to him in the final decree. He took no steps to protect his interest in the crop, and it was cut off by the decree as effectively as though he had himself deeded the land to Mrs. Dennison without reservation.

It is also contended that the court erred in holding that plaintiff was estopped to set up the true agreement in support of his action. It appears from the plaintiff's own testimony that, knowing that defendant was inquiring of him as to Mr. Dennison's interest in the corn for the pur-

pose of appropriating such interest, he deliberately deceived her as to such interest by suppressing the fact that Mr. Dennison was the owner of specific rows of shocks. We agree with the circuit judge that, having induced Mrs. ·Dennison to act upon his representation that Mr. Dennison was the owner of an undivided one-third of the corn, he was estopped to assert the contrary.

The judgment is affirmed.

GRANT, MOORE, MCALVAY, and BROOKE, JJ., concurred.