## NOTT *v.* GUNDICK.

1. PARTITION—UNDIVIDED INTERESTS—RIGHT TO QUESTION PLAIN-TIFF'S TITLE.

The owner of an undivided one-half interest in land against whom partition proceedings were brought by the owner of the other one-half could not question plaintiff's right to bring such proceedings because an intervener disputed plaintiff's title, since defendant had no interest in such dispute.

2. SAME—INTERVENER'S RIGHTS—STATUTES.

Since intervener's right to intervene under 3 Comp. Laws 1915, § 12362, was "in subordination to, and in recognition of the propriety of the main proceeding," by submitting himself and his interest to the jurisdiction of the court he could not question the right of the court to determine his interest, and, when determined adversely to him, to grant the decree for partition.

3. SAME—ASSIGNMENT—VALIDITY—EVIDENCE—SUFFICIENCY.

The conclusion of the court below that the assignment of a land contract to plaintiff was valid and that it antedated intervener's quitclaim deed to the same interest from the same assignor, *held*, supported by the record.

4. SAME—RIGHT TO MAINTAIN PARTITION PROCEEDINGS—TITLE—SUFFICIENCY.

Where plaintiff paid the balance due on the land contract and received from the vendor therein a warranty deed of the premises subject to said land ·contract, defendant's contention that plaintiff's title was insufficient to maintain partition proceedings because the conveyance was nothing more than an assignment of the vendor's rights in the property cannot be sustained, since the legal title was in the vendor and passed to plaintiff under said conveyance, subject only to vendees' rights under the land contract.

5. SAME—OCCUPATION OF PREMISES—RENTALS.

Where defendant has occupied the house on the premises

in question to the exclusion of plaintiff, the decree of the court below properly provided that any rental due from defendant to plaintiff from the date of the assignment to the date of partition should be taken into consideration in making the partition.

Appeal from Wayne; Hosmer (George S.), J. Submitted October 5, 1920. (Docket No. 13.) Decided December 21, 1920.

Bill by Lettie Nott against Martha Gundick for partition of certain real estate. Edward E. Hill was permitted to intervene and filed a cross-bill, claiming an interest in the property. From a decree for plaintiff, defendant and intervener appeal. Affirmed.

*Charles C. Stewart* and *William C. Gottman,* for plaintiff.

*Samuel W. Shier,* for defendant.

*Fitzgibbon & Quail,* for intervener.

SHARPE, J. On December 1, 1914, Albert Eastman entered into a land contract to sell and convey two lots in the city of Detroit to Albert Gundick and Martha, his wife, for a consideration of $2,600. On April 18, 1919, a decree of divorce dissolving their marriage was granted. In this decree each of the parties was awarded an undivided one-half interest in the equity they had under the land contract in the two lots. This decree was supplemented by another, made on May 12, 1919, which awarded the entire interest under the Eastman contract to Albert on condition that he should pay to Martha the sum of $555. This amended decree was vacated by this court in *Gundick* v. *Gundick,* 208 Mich. 34, except in so far as it corrected the description of the premises in the

original decree. The opinion was filed on December 22, 1919.

Pending the decision on appeal, the plaintiff, acting through her brother-in-law, Charles C. Stewart, procured an assignment from Albert Gundick of his interest in the Eastman contract, subject to the payment to be made to Martha under the amended decree, paying therefor $555, and on June 13, 1919, Eastman conveyed the lots to plaintiff by warranty deed, subject to the land contract executed by him to Albert and Martha Gundick, upon which there was then stated to be due the sum of $1,700.

It further appears that the intervener, Edward E. Hill, who was a dealer in real estate, being informed that the property was for sale, entered into negotiations with one Anna Manderano for its purchase by her and procured a check from her for $100 as a down payment. This check was delivered by Hill to Mr. Gottman, who was attorney for Albert in the divorce proceedings, who held it a few days. Immediately after the signing of the amended decree, Gottman informed Hill that he would give him four or five days to sell the property and, Mrs. Manderano being absent from the city, Mr. Hill procured William Sherman Lyster to purchase it and delivered to Gottman a certified check from Lyster for $1,200, which check Gottman deposited in the bank to the credit of his personal account. This money was afterwards returned to Lyster.

There was a dwelling house on the lots, of which Martha had retained possession. The plaintiff deposited with the clerk of the court a check for $555, payable to the order of Martha, in compliance with the terms of the amended decree, and demanded possession. This was refused by Martha, and on application to the court a writ of assistance was granted

plaintiff. Martha filed a bond to stay proceedings and took her appeal to this court. After the decision in this court the plaintiff, by permission of the court, withdrew the deposit made by her, demanded of Martha the amount due under the Eastman contract on her undivided one-half interest, and on her refusal to pay served notice of forfeiture of her interest under the contract. Plaintiff then began proceedings before Circuit Court Commissioner May to recover possession, whereupon Martha filed a bill against plaintiff to restrain such proceeding. This was, on motion of plaintiff, dismissed. Commissioner May finally determined that there was $887.45 due from Martha under the contract and this amount, together with the costs, she paid into court. This was accepted by plaintiff and the deed of an undivided one-half interest in the lots executed by her to Martha. Plaintiff then filed this bill for partition. The defendant Martha answered, denying that plaintiff owned the other undivided one-half interest in the lots and asked that the bill be dismissed. In the meantime, and on May 24, 1919, Albert Gundick conveyed the lots by quitclaim to the defendant Hill for a stated consideration of one dollar and other good and valuable consideration.

Pending the hearing, the attention of the trial court was called to the fact that Hill had secured such quitclaim deed and the attorney for Martha Gundick asked that he be made a party defendant. Later, Mr. Hill, when on the stand as a witness, requested that he be permitted to intervene. A petition therefor was presented by his attorneys and an order for intervention made, whereupon he filed an answer and cross-bill. In the latter he charged that the assignment from Albert to plaintiff was procured by fraud and collusion, that under his quitclaim deed he was the owner of Albert's interest, and asked for a decree accordingly.

The proofs were taken in open court and a decree granted dismissing Hill's cross-bill and for partition as prayed by plaintiff. Both of the defendants appeal.

1. It is claimed that plaintiff had no such title to an undivided one-half interest in the premises as entitled her to bring partition. Our attention is called to the decisions of this court in which it has been held that plaintiff in a partition suit must have a good-title to the interest claimed by him and that contested legal titles cannot be litigated in such a proceeding. *Hoffman* v. *Beard,* 22 Mich. 59; *Fenton* v. *Mackinac Circuit Judge,* 76 Mich. 405; *Warren* v. *Warren,* 151 Mich. 95. An exception to the rule thus stated is noted in *Hoffman* v. *Beard, supra:*

"If the title be an equitable one, or partly equitable and partly legal (*Overton* v. *Woolfolk,* 6 Dana, 371), the court of equity may very properly try the titles, and so probably when the title is of a purely legal character, but some obstacle exists to a fair and perfect trial at law."

Irrespective of whether the facts in this case bring it within the exception, we are of the opinion that this question cannot now be raised by either of the defendants. Martha Gundick makes no claim to other than an undivided one-half interest and is in no way interested in the dispute between plaintiff and Hill. The plaintiff, by virtue of her deed from Eastman and the assignment from Albert of his interest in the land contract, is the owner of the other one-half, unless her right thereto be affected by the quitclaim deed from Albert to Hill. The only interest Hill could have was the right to be permitted to pay up the amount due by Albert under the contract and thus secure from plaintiff a deed to a one-half interest. He owned no title to any part of this land which could be made the subject of a suit at law. After he secured his quitclaim deed, he might have taken proceedings in equity

to have his rights thereunder determined, but did not do so. He asked leave and was permitted to intervene under section 11 of chapter 12 of the judicature act (3 Comp. Laws 1915, § 12362) which provides:

"In an action either at law, or in equity, any one claiming an interest in the litigation may, at any time, be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

Having submitted himself and his interest in this property to the jurisdiction of the court by his intervention, which is declared by the statute to be "in subordination to, and in recognition of, the propriety of the main proceeding," in which partition was the only relief sought, we do not think he could thereafter question the right of the court to determine his interest and, when it was determined that he had none, to grant the decree for partition as between plaintiff and Martha Gundick.

2. Was the assignment from Albert Gundick to plaintiff a valid transfer of his interest in the land contract from Eastman? If so, as it antedates the quitclaim deed from Albert to Hill, the latter secured nothing by such deed. It will serve no useful purpose to review or quote from the testimony bearing on the claim that this assignment was procured by fraud or through collusion with Albert's attorney. The trial judge heard the witnesses and concluded that no such fraud or collusion was established. While the consideration paid him was less than his interest was worth at the time of the hearing, the trial judge found this was due to the large increase in values of real estate in certain sections of the city of Detroit. After a careful perusal of the record, we find no reason to disturb the conclusion reached by him.

3. It is claimed that the conveyance from Eastman to plaintiff "was nothing more than an assignment of

the vendor's rights in the property." The legal title was in Eastman, and this was conveyed to plaintiff, subject only to the rights of Albert and Martha under the land contract. As such rights had been severed by the divorce decree and the right of Albert to an undivided one-half interest had been assigned to plaintiff, the deed from Eastman conveyed an undivided one-half interest to plaintiff released from the provisions of the land contract and the other undivided one-half, subject to the right of Martha to secure a deed to the other one-half, a right which she afterwards exercised. The right of plaintiff under the assignment from Albert clearly became merged in her superior right under the warranty deed from Eastman. It cannot well be claimed that, had plaintiff secured from both Albert and Martha an assignment of their interests under the land contract to her, she would not then have had the absolute ownership of the premises as though the land contract had never been given.

4. The decree makes no specific provision as to the rent to be chargeable to defendant. It does, however, provide that the premises shall be divided equally "as near as may be, taking into due consideration any rental that may be due from the said Martha Gundick to the said Lettie Nott from May 22, 1919, to the date of partition." (May 22, 1919, was the date of the assignment from Albert Gundick to plaintiff.) The general rule is thus stated in 38 Cyc. at page 63:

"In the absence of statute or agreement to the contrary, a tenant in common, while merely in possession of the common property, not excluding his cotenants, nor denying them equal enjoyment, cannot be charged with rent for use and occupation. * * * If the nature of the property be such as not to admit of its use and occupation by more than one, and it is occupied by one of the tenants in common only; or if, although capable of occupation by more than one, it is yet so used and occupied as in effect to exclude the

others, he so occupying will be held accountable to the others for the rents and profits."

This is, in effect, the rule laid down by this court in *Hunt* v. *Hunt*, 109 Mich. 399, and followed in *Fenton* v. *Miller*, 116 Mich. 45 (72 Am. St. Rep. 502). See, also, *Schultz* v. *Dennison*, 159 Mich. 259 (25 L. R. A. [N. S.] 1249), wherein it is said:

"It is competent in partition proceedings to adjust the equities of the parties in the decree."

We think the provision of the decree relative to rents was fully justified by the proofs.

We have given consideration to the other questions discussed by counsel. In our opinion, they are in no way controlling. The decree is affirmed, with costs to plaintiff against both defendants.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.