## GILLMETT *v.* TOURCOTT.

1. INFANTS—SALE OF PERSONALTY—FRAUD—RESCISSION.

   An infant may, for fraud in the inception of a contract, rescind the purchase of personal property before reaching majority, and especially where the contract cannot be for his benefit.

2. SAME—DEEDS—REAL ESTATE—GIFT FROM INFANTS TO MOTHER VOID.

   Where a deed from infants to their mother was a gift it was manifestly and necessarily prejudicial to them and therefore void, and could be disaffirmed by them before reaching their majority.

3. GUARDIAN AND WARD—PARTITION—GENERAL GUARDIAN—JUDICATURE ACT.

   Under the judicature act (3 Comp. Laws 1915, § 13258 *et seq.*), the general guardian of infants has authority to bring proceedings to set aside a void deed from them and for partition of their undivided interest in the real property and personalty, and for an accounting for rents, issues, and profits.

4. INFANTS—DEEDS—VOID DEED—PARTITION—LIENS—MODIFICATION OF DECREE.

   Where a deed from a mother and minor children to defendant was void as to the interest of the minors, but valid as to the interest of the mother, the decree adjudging defendant husband and wife to be indebted to plaintiffs will be modified to exclude the wife, she not being a purchaser, and also limiting the lien on defendants' property to such real and personal property as came into possession of defendant husband in the transaction in question, and the mortgage given back by him to secure the purchase price will be reduced one-half and stand as a lien upon his undivided one-half interest in said property.

Appeal from Newaygo; Barton (Joseph), J. Submitted January 18, 1921. (Docket No. 99.) Decided March 30, 1921.

Bill by Lloyd R. Gillmett and another, infants, by Bessie M. Gillmett, their guardian, against Michael Tourcott and others for a partition of certain real and personal property, for an accounting for rents, and to enjoin removal or waste. From a decree for plaintiffs, defendants appeal. Modified and affirmed.

*William J. Branstrom* (*William K. Clute*, of counsel), for plaintiffs.

*John G. Anderson*, for defendants.

STONE, J. The bill of complaint herein was filed to obtain a partition of the undivided one-half interest of Lloyd R. Gillmett and Mabel Gillmett, two minors, in a 15 acre parcel of land in Newaygo county, upon which stands a hotel property, together with the furnishings of the building for its use for dwelling house and hotel purposes; also for an accounting for the rents, issues and profits of the said premises from Michael Tourcott, the occupant of such undivided half interest, during the period of his occupancy. The bill further prays that, if a physical division is impracticable, the said property, real and personal, be sold under the decree of the court, and the proceeds divided, according to the rights of the parties therein to be determined by the decree. Further, for a temporary injunction to restrain removal or waste of the personal property pending the suit. The bill also contains a prayer for general relief.

Prior to 1913 the father of Bessie M. Gillmett made a gift of $4,000 to her and her three children, the plaintiffs herein, and Viril Caplan (formerly Viril Catlett, a daughter by a former marriage). On June 12, 1913, the mother, Bessie R. Gillmett, invested $800 of this money in the purchase of the land in question, taking the deed to herself and the three children above

named. She afterwards built a hotel on the premises at an additional expense of over $2,200. When the hotel building was finished, it was furnished at an expense of upwards of $750. The property was occupied by Mrs. Gillmett and her three children, and each owned an undivided one-fourth interest therein.

These investments were all made from said fund of $4,000. The mother and children lived in this house until 1916 as a home. The daughter Viril had reached her majority, had married, and later removed to Cleveland, Ohio. Some time prior to September, 1916, Mrs. Gillmett had in mind making a · deal to dispose of the property to some Chicago parties, and she asked the three. children to deed the property to her, which they all did. Viril being of age deeded her undivided interest to her mother on March 31, 1915. The deed from the two minor children, Lloyd R. and Mabel, to their mother was executed and delivered May 10, 1915. Mabel was 16 years of age in August, 1920, and Lloyd was 18 years of age in April, 1920, which would make their ages 10 years and 13 years, respectively, when they gave the deed to their mother. The two deeds were duly recorded April 27, 1916, which was nearly five months before any talk of dealings was had with the defendant Tourcott. Neither of these children. was paid anything for the said deeds.

In September, 1916, there were negotiations between Bessie M. Gillmett, the mother, and defendant Michael Tourcott about his purchasing the property, which resulted in a sale of it to him by warranty deed executed by Mrs. Gillmett, dated September 26, 1916, for a consideration of $3,000. He paid to her $500 in cash, and on the same day gave her a mortgage for $2,500 on the same property to secure the payment of the balance. This deed was recorded March 20, 1919, and the mortgage was recorded

October 4, 1916. It contains a provision that it "cannot be foreclosed until November 1, 1921." It provided that $500 payments were to be made on November 1st of the years 1917, 1918, 1919, 1920 and 1921. This mortgage was assigned by Mrs. Gillmett to her daughter, Viril Caplan, on September 2, 1919, recorded September 8, 1919. Mrs. Caplan is named as defendant because of such assignment.

When the deed was delivered to defendant Michael Tourcott in September, 1916, he and his wife, Marguerite, took immediate possession of the property both real and personal, and so continued to the time of the filing of the bill herein. When they took possession the hotel building and its furniture and equipment were in good condition. The building was erected and furnished with new furniture in 1913. There were 14 rooms in all, with 8 sleeping rooms all furnished. The barn was insured for $100 and the hotel building for $750. At the time Mrs. Gillmett deeded to the defendant Tourcott she was not at all familiar with business affairs, or the law with reference to the rights of infants in property or how it should be managed. The testimony discloses that before deeding the property she had expressed to defendant Tourcott some doubt as to the validity of the deed from the two minor children to herself. She testified to the following conversation with defendant Tourcott in September, 1916, before the deed was executed:

"When I got the abstract ready, and got it back from White Cloud, I told Mr. Tourcott about it. I was worried that maybe those deeds wasn't right. I said perhaps I had to go to some lawyer and see about it, those deeds of the children to me weren't right and he says, 'Never mind, Mrs. Gillmett, if you give me a warranty deed that is all I ask of you.' I told him how old the children were, he knew that, seen them every day. He never asked me

to have the children sign the deed.   *   *   *
I showed Mr. Tourcott the abstract of the title.
*   *   *    We had it there and I told him all
about it, but he didn't read it because he can't read or
write. His wife was there, and after he was gone the
abstract was lying on the table.   *   *   *    I told
him all about what was in it, how the children had
deeded it to me. I thought the deed wasn't good, and
I asked him if I should go to White Cloud and look it
over with some lawyer, and he said: 'Why, Mrs.
Gillmett, if you give me a warranty deed, that is all I
ask of you.' He wouldn't say anything then about the
children arriving at age, but later on, a year after,
when the interest came due, and the payment, well,
then he wrote me a letter, and you have got the letter.
At the time I gave Mr. Tourcott a deed he paid me $500
and gave me a mortgage back for $2,500. He would
not pay the children anything; they have never receiv-
ed anything for their interest in the personal property.
I never paid the children anything for their interest
in the property.   *   *   *

"I did not talk to the children about the sale of the
property—when I fixed this deed up the children were
out playing, and I had them come in, and deed it over
to me, and they didn't pay any attention to it. We
didn't fix it up for Mr. Tourcott's deal at all. The
deed from Lloyd and Mabel was made on the 10th day
of May, 1915, and I sold to Mr. Tourcott on the 26th
day of September, 1916."

Mrs. Gillmett was corroborated in this testimony
by that of the daughter Viril Caplan.

Subsequently defendant Tourcott became inform-
ed of the infirmity of the deed from the two minor
children to their mother, and he asked Mrs. Gillmett
to perfect his title. Later Mrs. Gillmett was appoint-
ed guardian of the children in Ohio, and made and
tendered a deed to defendant Tourcott. Upon that
subject she testified:

"*Q.* Before the 26th of September, 1916, weren't
you the guardian of Mabel and Lloyd Gillmett?
"*A.* No, sir.

"*Q.* I will ask you if you didn't make a deed as the guardian of them at that time?

"*A.* No, sir, I didn't.

"*Q.* When did you make a deed?

"*A.* Well, it must have been nearly two years after that.

"*Q.* Now, Mr. Tourcott told you that that deed that you sent him from Ohio was not a good deed, too, didn't he?

"*A.* Yes. He told me he laid it on the shelf and said it was no account.

"*Q.* And then you applied here to this probate court for a guardianship?

"*A.* I had already applied before that because my attorney there found he wasn't in the right, and he said: 'Why that deed you sent them—Mr. Tourcott, wasn't no account, and we have got to go through the Michigan laws here for you to become guardian of these children.' I did get a license to sell the property, and we can show it."

Finally Mrs. Gillmett offered Tourcott a good and valid guardian's deed of the interests of the two minor children, which he refused to receive and make his past due payments. From this time on defendant Tourcott seems to have adopted "a dog in the manger policy," and would neither accept a good deed nor pay for the property, claiming that he could hold the property until the younger of the minors became of age, making no payments, neglecting repairs, letting the taxes go by default, paying no insurance, upon the pretext that the two infants could not disaffirm their deed to their mother until they had both arrived at their majority, and that their guardian, duly appointed by the probate court of Newaygo county, was as helpless in their behalf as they were themselves.

There was very little conflict in the evidence upon the hearing. The trial court found that the equities were with the plaintiffs, and found and decreed that since about October 1, 1916, said Michael Tourcott

had been in actual possession and occupancy of the said real and personal property, and that the fair rental value of said premises was $25 per month, one-half of which rental plaintiffs were entitled to recover from said defendants; that the deed to defendant Tourcott, so far as it affected the said infants' undivided one-half of said property was null and void; that the property could not be divided without manifest injury to the parties interested, and that in order to do equity in the premises it was necessary that said property, both real and personal, be sold, and the proceeds thereof divided among such parties as may be entitled thereto, according to their respective rights and interests; it was ordered and decreed that all of said real and personal property, describing it, be sold at public auction to the highest bidder by a circuit court commissioner of said county, and that due notice of the time and place of such sale be given in the same manner as is provided by law on sales of real estate by sheriffs on execution; that the said infants were the owners in their own right of an undivided one-half interest in and to said premises by an estate in fee simple, and that they were also the owners in their own right of an undivided one-half interest in and to the furnishings, equipment and personal property in said hotel obtained by said defendant from said Bessie M. Gillmett on September 26, 1916, and that said defendants Tourcott were the owners of the remaining undivided one-half interest in said property, subject, however, to a real estate mortgage which appears of record in the office of the register of deeds of said county in liber 84 of mortgages on page 553—being the mortgage herein described.

It was further adjudged and decreed that the said Michael Tourcott and Marguerite Tourcott were indebted to the said plaintiffs in the sum of $525 as

rental of plaintiffs' interest in said real estate and personal property, since September 26, 1916, and that plaintiffs have a lien on all the real and personal property of said defendants Tourcott until the said sum was fully paid and satisfied. The decree also restrained defendants Tourcott from injuring, removing, selling or disposing of any of the real or personal property involved. From this decree the defendants Tourcott have appealed, and they invoke the rule that a conveyance of real property by an infant cannot be avoided by him until he becomes of age, citing *Shreeves* v. *Caldwell*, 135 Mich. 323 (3 Ann. Cas. 592), and many decisions in other jurisdictions, and many text books.

It should be borne in mind that this case involves both real and personal property and that no consideration passed to the plaintiffs, but that the deed to their mother was really a gift. The plaintiffs ask that the deed in question be disaffirmed by the court. They concede the general rule invoked by the defendants, but claim that this rule of law will yield to special circumstances, such as are shown here, involving bad faith, fraud, undue influence, or improper advantage taken of the infants in procuring such a deed; that it is a rule in equity jurisprudence that the chancellor will look with a jealous eye over the estates of infants and guard them against all forms of artifice, fraud or undue advantage whatsoever, taken or devised to cheat them out of their property; that the rule which requires an infant to wait until attaining majority before affirming or disaffirming his deed must yield in the presence of fraud and waste practiced by the grantees in such conveyance of land and personal property, in the same way that such general rules of law yield in many other respects where the principles of equity jurisprudence are invoked; and that the chancellor, in the exercise of a sound discre-

tion, may disaffirm the conveyance for them. It is urged that while every man is presumed to know the law, yet equity will yield to the universality of that principle, and give relief to a victim of the effects of its operation, where fraud and undue influence have been practiced, or a mistake occurs with reference to private property rights. Or where the conveyance is brought about through ignorance or mistake of law and fact as to such rights, and that the rule which applies to adults equally applies as to infants. Many authorities are cited, including 2 Pomeroy Equity Jurisprudence (4th Ed.), §§ 841 to 854, (especially 849) and cases cited.

It is well settled in this State that an infant may, for fraud in the inception of the contract, rescind the purchase of personal property before reaching majority; and especially where the contract cannot be for his benefit. *Bloomingdale* v. *Chittenden,* 74 Mich. 698; *Stoll* v. *Hawks,* 179 Mich. 571 (51 L. R. A. [N. S.] 28); *Patterson* v. *Kasper,* 182 Mich. 281 (L. R. A. 1915A, 1221). There is much force in the claim of plaintiffs that there can be no difference, in principle, in the law of rescission for fraud, mistake, or undue influence whether the property involved is chattels or land; neither is there any difference in equity whether the advantage is gained through fraud or mistake, or through undue influence, undue advantage of illiteracy, ignorance of childhood, especially where the transaction cannot benefit the infant.

In 14 R. C. L. § 18, title "Infants," appears the following:

"The infant is therefore given protection from immediate loss, by giving him the right to re-enter on the land, and take its rents and profits; but he cannot finally retransfer the title until he reaches his majority. He can, however, bring an action during his infancy to set aside the deed," citing *Harrod* v.

*Myers,* 21 Ark. 592 (76 Am. Dec. 409) ; *International Land Co.* v. *Marshall,* 22 Okla. 693 (98 Pac. 951, 19 L. R. A. [N. S.] 1056).

Turning to the *Harrod Case,* at page 600, we find the following language:

"There is some diversity in the books, as to the proper time of avoiding the deed of an infant; some cases intimating that it cannot be done till the infant arrives of age; some that the disaffirmance should be before that period, from analogy to the time of avoiding a fine levied or recovery suffered, and others holding the time to be immaterial, so that not disavowing the deed shall not be so long delayed as to work its ratification. Of course, where a former deed is to be invalidated by a subsequent deed to another person, it must be done after full age, for the same want of capacity that makes the first revocable might annul the second deed. But the act of infancy can be revoked by entering upon the land and taking the profits while an infant; and we find no case that denies his right to invoke the aid of chancery to relieve him from the improvidence and folly of his immature years; nor, considering the relation of courts of chancery to infants, would we expect to find such a case."

See, also, *Ryan* v. *Morrison,* 40 Okla. 49 (135 Pac. 1049) ; *Doe, ex dem. Jackson,* v. *Woodruffe,* 7 U. C. Q. B. 332.

We repeat that the deed from the two infants was a gift.

In *Robinson* v. *Weeks,* 56 Me. 102, it is said:

"We think the true doctrine is that contracts of minors may be divided into three classes: 1. Binding, if for necessaries at fair and just rates. 2. Void, if manifestly and necessarily prejudicial, as of suretyship, gift, naked release, appointment of agents, confession of judgment or the like. 3. Voidable, at the election of the minor either during his minority or within a reasonable time after he becomes of age; and this last class includes all the agreements of a minor

which may be beneficial, and are not for necessaries until fully executed on both sides, and all executed contracts of this sort where the other party can be placed substantially *in statu quo.*"

There can be no question that in the instant case the deed was "manifestly and necessarily prejudicial" to the plaintiffs, and we think the Maine rule should be applied. See 1 Elliott on Contracts, §§ 286, 288.

An infant's bond with penalty and for the payment of interest has been held to be void on the ground that it could not possibly be for his benefit. See *Baylis* v. *Dineley,* 3 M. & Sel. 477; *Fisher* v. *Mowbray,* 8 East, 330. The mortgage of a minor's property to secure her husband's debt has been held void. *Chandler* v. *McKinney,* 6 Mich. 217; *Cronise* v. *Clark,* 4 Md. Ch. 403. So an infant's promissory note as surety. *Maples* v. *Wightman,* 4 Conn. 376; *Curtin* v. *Patton,* 11 S. & R. (Pa.) 305. So as to a release by a minor to his guardian. *Fridge* v. *State,* 3 Gill. & J. (Md.) 103, 115. An infant's release of his legacy, or distributive share, is held to be void in *Langford* v. *Frey,* 8 Humph. (Tenn.) 443.

In *Person* v. *Chase,* 37 Vt. 647, at page 648, the court, speaking of gifts made by infants, said:

"The rules of law as to infants are made for their protection, and this has been the chief consideration which has been regarded in the adjudged cases, in determining the legal character of their acts."

It has been held that an infant's deed, conveying his lands without any, or upon a mere nominal consideration, is absolutely void, and invests his vendee with no title whatever. *Robinson* v. *Coulter,* 90 Tenn. 705 (18 S. W. 250); *Swafford* v. *Ferguson,* 71 Tenn. 292.

In the last cited case the court said:

"When the court can pronounce the contract to be to the infant's prejudice, it is void."

See, also, *Harrod* v. *Myers, supra.*

In the instant case the consideration named was two dollars, but the undisputed evidence was that nothing was paid, and plaintiffs have never received a cent for the conveyance. We think the deed was void, and that plaintiffs may take steps to avoid it during minority.

We agree with the trial court that the equities of the case are with the plaintiffs.

Some question is raised as to the right of the general guardian to file the bill. We think that chapter 31 of the judicature act (3 Comp. Laws 1915, § 13258 *et seq.*), entitled: "Of the partition of lands owned by several persons," gives ample authority for the practice pursued here.

We agree in the main with the conclusion reached by the trial court. The decree below, however, should be so modified as to exclude defendant Marguerite Tourcott from any indebtedness to the plaintiffs. And the lien of the plaintiffs should be only upon the real and personal property which came to the possession of the defendant Michael Tourcott in the purchase from Mrs. Gillmett. The principal of the mortgage will be reduced to $1,000, as of its date, and will stand as a lien upon the undivided one-half interest of the defendant Michael Tourcott. The decree so modified will stand affirmed, with costs of this court to the plaintiffs.

STEERE, C. J., and MOORE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred. The late Justice BROOKE did not sit.