FRENZEL *v.* HAYES.

1. PARTITION—SUIT MAINTAINABLE BY WIDOW IN OWN RIGHT AND AS ADMINISTRATRIX.

   The widow of a devisee of an interest in land has a right to file a bill for partition to enforce her individual rights, her rights as guardian of an infant daughter, and her rights as administratrix of her husband's estate.

2. SAME—APPEAL AND ERROR—QUESTION OF DEMAND RAISED ON APPEAL TOO LATE.

   Where defendants in a partition suit, in their answer, stated they had no objection to partition, they may not, on appeal, raise the objection that no demand for partition was made before filing the bill, and that certain prerequisites were not complied with.

3. SAME—RIGHT TO SALE IF PARTITION NOT FEASIBLE.

   In said suit *held*, that plaintiff is entitled to partition or a sale if partition is not feasible.

4. SAME—ONE IN EXCLUSIVE POSSESSION MAY BE REQUIRED TO ACCOUNT THEREFOR.

   Although one cotenant may not recover rent from another cotenant who with his consent occupied the premises owned in common, yet where the question arises in partition proceedings in equity, and particularly when the possession has been exclusive, the court has recognized that in adjusting the equities of the parties the one who has had exclusive use and occupation of the premises should account therefor.

5. SAME—ACCOUNTING—RENTAL VALUE OF FARM PROPER BASIS FOR ACCOUNTING.

   Where, in proceedings for the partition of a farm and for an accounting, there was testimony as to the rental value of the farm, of which defendant had exclusive possession, the court below was justified in fixing that as the basis upon which he should account.

[1]Partition, 30 Cyc. pp. 197, 200; 20 R. C. L. 743; 3 R. C. L. Supp. 1109; [2]Appeal and Error, 3 C. J. § 599; [3]Partition, 30 Cyc. p. 269; [4]Id., 30 Cyc. p. 232.

6. SAME—EQUITY NOT OUSTED OF JURISDICTION BECAUSE QUESTIONS OF TITLE ARISE.

While, under guise of partition proceedings, parties may not maintain a proceeding launched to try title alone, a court of chancery is not ousted of jurisdiction because questions of title arise in partition proceedings which, in the interest of all the parties, require the settlement of adverse claims before a judicial sale is ordered.

7. SAME—HOW QUESTIONS OF TITLE DETERMINED.

If the question is of a character requiring a determination of the title by an action at law, the court will stay the partition case until the question of title is settled by an action at law, and if the question is one which may be heard and settled in equity, the equity court in which the partition case is pending hears and decides the question in that proceeding.

8. SAME—EQUITY—QUESTION OF FRAUD SETTLED IN PARTITION CASE.

Where, in proceedings for the partition of a farm, one of the defendants filed a cross-bill alleging that a brother had obtained a deed of his interest by fraud, and asking that it be set aside, the court properly determined said question before proceeding with partition.

9. EQUITY—LACHES—DELAY ALONE WILL NOT BAR RELIEF FROM FRAUD.

Delay alone will not bar relief from fraud, especially where defendant has not been harmed thereby.

10. CANCELLATION OF INSTRUMENTS—TENDER NOT A PREREQUISITE—ACCOUNTING.

It is not a necessary prerequisite to instituting a suit to set aside a deed for fraud that tender be made, especially where an accounting is to be had and defendant is not entitled to the full amount paid by him.

Appeal from Saginaw; Browne (Clarence M.), J. Submitted April 18, 1928. (Docket No. 175.) Decided June 4, 1928.

Bill by Frances Hayes Frenzel, individually, and as administratrix of the estate of Morgan Hayes, deceased,

---

⁶Partition, 30 Cyc. p. 238; 20 R. C. L. 724; ⁷Id., 30 Cyc. p. 243; ⁹Equity, 21 C. J. § 219; 43 L. R. A. (N. S.) 924; 4 R. C. L. 494; 1 R. C. L. Supp. 1148; 5 R. C. L. Supp. 244; ¹⁰Cancellation of Instruments, 9 C. J. § 107.

and another against William Hayes, Amanda Hayes, and others for partition of certain real estate.    Defendants Richard Hayes and Helena P. Hayes filed a cross-bill to set aside a sale to defendant William Hayes on the ground of fraud.    From the decree rendered, defendants William Hayes and Amanda Hayes appeal. Affirmed and remanded for an accounting.

*Otto & Holland,* for plaintiffs.

*Robert J. Curry,* for defendants Richard Hayes and Helena P. Hayes.

*R. L. Crane,* for defendants William Hayes and Amanda Hayes.

Michael Hayes died testate July 14, 1910, the owner of the west half of the northeast quarter of section 11, township of Buena Vista, Saginaw county, which was his homestead.    He left a widow, Isabella, and six sons, William, John, James, Richard, Michael, and Morgan.    The widow was given the life use of both real and personal property.    After her death the homestead was devised to Richard and Morgan, but it was misdescribed in the will as the northeast quarter of the northwest half of the section.    Richard and Morgan were each to pay $450 to William, John, and James.    The widow had the use of the farm until her death May 29, 1923.    Some of the boys had consulted an attorney and had been advised that the will by reason of the misdescription was invalid; we are satisfied that the boys all so understood.    After their mother's funeral and on June 2d, John, Richard, Michael, and James signed a paper in form an offer to sell the farm to William at the price of $8,000, and one-half of the expenses accumulated by the mother, including a mortgage on the farm.    It is fairly well established that the talk among the brothers was that they were to be paid $1,000 each in 60 days and an ad-

justment had later.   Morgan died before this leaving
a widow, Frances, who was pregnant, and who gave
birth to a daughter, Marjorie.   Frances has since
married and is the plaintiff Frances Hayes Frenzel.
She is the administratrix of Morgan's estate and
guardian of Marjorie.   She was later approached by
William to sell Morgan's interest in the farm, and was
inclined to acquiesce in and become a party to the
arrangement among the boys.   She, however, took
counsel and was advised that the will was valid and
that Morgan took a half interest in the homestead sub-
ject to the payment of the sums to the other boys.   A
meeting was held between her attorney and William
and his attorney.   Her attorney explained his views
to them.   William's attorney evidently was impressed
that a court of chancery might construe the will
as plaintiff's counsel contend.   This meeting was
held October 1, 1923.   Richard lived in Minneapolis.
On October 1st, William's attorney drew a deed from
Richard to William and procured a certified copy of
the will, and within a few days William went to
Minneapolis.   While there is a direct conflict in the
testimony, we are satisfied that he represented to
Richard that he had settled with the other boys, and
procured Richard's signature and that of his wife to
the deed upon the representation that he had paid
each of the boys $1,000, and that he and they were all
carrying out the arrangement made shortly after the
mother's death.   As a matter of fact he had made no
settlement with any of them, nor had he paid any of
them anything.   Not long after this the brothers
learned of his trip and called on him.   He at first
denied making the trip, but finally admitted it, and
admitted that he had the deed, and ended the inter-
view by informing them that they "could go to hell;"
that he "was done with them."   In the following April
the other brothers all joined in a bill for the con-
struction of the will, and the same month this bill

was filed for partition.    On May 18, 1925, a decree was entered construing the will to give to Richard and Morgan the homestead subject to the payments of cash heretofore referred to.    Richard was a necessary party to this proceeding if for no other reason than a defective description in his deed to William, and he was brought into the case by an amended bill.    He answered and asked affirmative relief against William and his wife, *i. e.*, that his deed to William be set aside as procured by fraud.    From a decree setting aside the deed from Richard to William, awarding partition, and charging William for the use and occupation of the premises, he and his wife appeal.    William will be referred to as defendant and Richard as cross-plaintiff.

FELLOWS, J. (*after stating the facts*).    1. Plaintiff seeks to here enforce her individual rights, her rights as guardian of Marjorie, and her rights as administratrix of Morgan's estate.    She has the right to enforce her interest as widow of Morgan, and she may, as guardian, file a bill for partition.    *Gillmett* v. *Tourcott,* 213 Mich. 617.    The bill is, therefore, maintainable and we need not discuss whether an administrator alone may maintain such a bill.    Defendants' counsel now insist that no demand for partition was made before filing the bill, and that certain prerequisites were not complied with.    It is doubtful if a demand for and refusal of partition was necessary.    30 Cyc. p. 219.    But, upon the state of the pleadings, defendants may not now complain of failure to comply with minor technical prerequisites.    In their answer they say:

"Answering paragraph 12, these defendants say if plaintiffs desire a partition and division of said 80 acres of land, these defendants have no objection thereto. In fact, it being joint property, if either party desires a division he has the privilege of doing so by agreement or by invoking the aid of the court in the premises. These defendants to avoid expenses are ready and

willing to make a division out of court if so desired by plaintiffs.    Otherwise, court procedure is necessary, notwithstanding the expenses and risks of such method."

Plaintiff is entitled to partition or a sale if partition is not feasible.

2. Defendant insists he should not account for the use and occupation of the premises, and also insists that the amount fixed is too high.    One cotenant may not recover rent from another cotenant who with his consent occupied the premises owned in common.    But where the question arises in partition proceedings in equity, and particularly when the possession has been exclusive, this court has recognized that in adjusting the equities of the parties the one who has had the exclusive occupation of the premises should account for its use and occupation.    *Fenton* v. *Miller,* 116 Mich. 45 (72 Am. St. Rep. 502) ; *Hunt* v. *Hunt,* 109 Mich. 399; *Schultz* v. *Dennison,* 159 Mich. 259 (25 L. R. A. [N. S.] 1249) ; *Wettlaufer* v. *Ames,* 133 Mich. 201 (103 Am. St. Rep. 449) ; *Nott* v. *Gundick,* 212 Mich. 223.    The case of *Owings* v. *Owings,* 150 Mich. 609, is not out of accord with the cited cases.    In that case the court found that the possession was with the consent of the cotenants.

In the spring of 1924, John made arrangement with the administrator of his father's estate to rent the farm for $500 a year, and, in addition, to pay the insurance.    He went to the place but William drove him off with a pitchfork and continued to occupy the premises.    Other testimony fixed the annual rental value at $500, and there is little to dispute it.    This is the figure fixed by the trial judge, and we agree with him.

3. We are satisfied from the testimony in the case that William perpetrated a fraud on his brother Richard when he obtained his half interest in the farm for $1,000.    If this is an appropriate proceeding to

determine that question, and Richard is now in position to assert his claim of fraud, the decree as affecting the rights of these two brothers should be affirmed. While it is true that under guise of partition proceedings parties may not maintain a proceeding launched to try title alone, it is likewise true that a court of chancery is not ousted of jurisdiction because questions of title arise in partition proceedings, which in the interest of all the parties require the settlement of adverse claims before a judicial sale is ordered.    30 Cyc. p. 238.    Two cases in this court which follow earlier cases, we think, demonstrate the correct practice where the question of title arises in partition cases.    If the question is of a character requiring a determination of the title by an action at law, the court will stay the partition case until the question of title is settled by an action at law.    *Fenton* v. *Mackinac Circuit Judge,* 76 Mich. 405, following and citing *Hoffman* v. *Beard,* 22 Mich. 59.    If the question is one which may be heard and settled in equity, the equity court in which the partition case is pending hears and decides the question in that proceeding.    *Gillmett* v. *Tourcott, supra.*    This case but followed the early case of *Page* v. *Webster,* 8 Mich. 263 (77 Am. Dec. 446).    In the *Gillmett Case* the court set aside the deed of minors to their mother and ordered partition in the same decree, and in the *Page Case* the bill which was maintained sought the setting aside of a tax deed and partition in the one suit.    We think it quite proper that questions of title be settled before there is a judicial sale of the premises.

Richard could not have maintained ejectment; his remedy to set aside the deed was through a court of equity.    In *Moran* v. *Moran,* 106 Mich. 8 (58 Am. St. Rep. 462), it was said:

"It is true, as contended, that the uniform practice in this State has been to test the validity of deeds, given under the circumstances claimed in this case,

by a bill to set them aside. No case is found where, under like circumstances, this court has permitted a deed for which a consideration had been paid, and which appeared to be executed with due formality, to be set aside in an action of ejectment. It has always been done in equity, where the interests of all parties could be protected."

It is insisted that cross-plaintiff's laches precludes him from the relief granted. The suit for the construction of the father's will was pending for something over a year; it was some time after the decision in that case before Richard came into this case and here asked for affirmative relief. Delay alone will not bar relief. In the instant case William has not been harmed by it. He has been in possession of the premises for several years and up to date has paid nothing but the taxes. He has removed to his own farm some 400 rods of wire fence. He insured the buildings in his own name and on the loss of the barn received $2,800 insurance, no part of which has he been required to give up. Indeed, upon this record the delay has been quite profitable for him.

Finally, it is insisted that Richard may not maintain his cross-bill because he did not tender back the $1,000 received from William before bringing suit. In the recent case of *Chaffee* v. *Raymond*, 241 Mich. 392, the distinction between rescission at law and a suit in equity to rescind was pointed out and it was held that a tender before institution of the suit was not imperatively prerequisite to the filing of a bill to rescind. Here William had had the use of the premises for considerable time and as we have decided was obligated to pay for such use and occupation. He did not have $1,000 coming to him from Richard when Richard filed his cross-bill but in the cross-bill filed by Richard and his wife proffer of return of the $1,000 was made.

We have been unable to discover any good reason for reversing the decree, and it is affirmed. It ap-

peared at the argument that William was still in possession. The record discloses that the decree in the court below was entered nearly two years before the case reached us. The case must, therefore, be remanded for the adjustment of accounts, William, of course, must account for the use and occupation. If he has paid the taxes he should receive credit. Plaintiff and cross-plaintiff will recover from defendant their costs in this court.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.